ADAMS ET AL. *v.* THE REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION ET AL.

[No. 29,567. Filed June 27, 1957.]

*Ralph N. May,* of Indianapolis, for appellants.

*Edwin K. Steers,* Attorney General, and *William S. McMasters,* Deputy Attorney General, for appellee Review Board of the Indiana Employment Security Division.

*Walter Wm. Evans, Frederic D. Anderson, Kurt F.*

*Pantzer, Jr.,* and *Barnes, Hickam, Pantzer & Boyd* (of counsel), all of Indianapolis, for appellee Western Electric Co., Inc.

BOBBITT, J.—This case comes to us on petition to transfer from the Appellate Court under §4-215, Burns' 1946 Replacement. See, *Adams* v. *Review Board of Indiana Employ. Sec. Div.* (1957), 139 N. E. 2d 577, for opinion of the Appellate Court.

Appellants, as employees of appellee Western Electric Company, Incorporated, at its Indianapolis, Indiana, plant, brought this proceeding to recover unemployment compensation insurance for a standard vacation period from July 18, 1955 to July 31, 1955, when appellee had shut down its plant and ceased production work of any kind.

From a decision of the Review Board holding that appellants were voluntarily unemployed and unavailable for work during such standard vacation period and were not entitled to benefit rights during such period, this appeal is prosecuted.

The Review Board made Findings and Conclusions in pertinent part as follows:

"3. That all of the claimants involved herein, excepting C-143, C-19, C-78, C-133, and C-170, were members of a bargaining unit for which the IBEW was the authorized bargaining agent, and that the wages, hours, and conditions of employment of such claimants were governed by a bargaining agreement entitled 'General Agreement' entered into by and between the employer and the IBEW and effective May 15, 1955 through the period of time involved herein.

"4. That the aforesaid 'General Agreement' provided for a standard vacation period during which all employees except those required to work due to the needs of the business should take their vacations and that the employer, acting within its

rights under such agreement, closed its plant for the period of July 18, 1955, to July 31, 1955 for vacation purposes.

"5. That the 301 claimants covered by the said 'General Agreement' were parties to it through their bargaining agent, were bound by its terms to accept the 'Standard Vacation Period' for their own vacation purposes, and therefore were on voluntary leave for vacation purposes during such period.

"8. That all the claimants except C-143 were unavailable for work under Section 1403 of the Act and ineligible for benefit rights for the calendar weeks ending July 23 and July 30, 1955.

"In reaching its findings and conclusions in the instant case, the Review Board has considered carefully the distinguishing features of the facts here as contrasted with those in the case of *American Bridge Company* v. *Review Board,* 121 Ind. App. 576, 98 N. E. 2d 193 (1951), wherein benefit rights were allowed to claimants ineligible for vacation pay who were out of work during a plant shutdown for inventory and vacation purposes. In the *American Bridge* case the plant was shut down for the primary purpose of taking an inventory, rather than solely for vacation purposes as in the instant case. In the *American Bridge* case, by the express terms of the employment contract with the union, the period of shutdown could be designated as a vacation period only for those employees eligible for vacations with pay, whereas in the instant case the employment contract provides for the scheduling of vacations during the standard vacation period for all employees not required to work, without any distinction being made between those eligible for vacation pay and those not so eligible. . . .

"In its conclusion that all except five of the claimants herein are bound individually by the 'General Agreement' between the employers and the IBEW, the Board is guided by the decision of the Indiana Appellate Court in *Standard Oil Company (Indiana)* v. *Review Board,* 119 Ind. App. 576, 88 N. E. 2d 567 (1949).

"It is declared in Section 101 to be the purpose of the Act to provide benefits for 'persons unemployed through no fault of their own.' 'Fault' here means 'volition,' rather than a wrong doing or something worthy of censure. *Walter Bledsoe Coal Company* v. *Review Board*, 221 Ind. 16, 46 N. E. 2d 447 (1943). The conclusion here that claimants were unavailable for work as a matter of law, by reason of being unemployed by their own 'volition' as expressed through their contracts of hire, is in harmony with this declared purpose of the Act.

*"DECISION:* The decision of the referee is reversed. The 301 claimants covered by the collective bargaining agreement between the employer and IBEW, and claimants designated as C-19, C-78, C-133 and C-170 were voluntarily unemployed and unavailable for work during the Standard Vacation Period from July 18, 1955 to July 31, 1955 and are not entitled to benefit rights during such period. The case of C-143 is remanded to the referee for further proceedings consistent with the finding heretofore made."

The facts upon which the findings and conclusions of the Review Board are based may be summarized as follows:

The 301 claimants involved herein were among the employees who are hourly-rated production and maintenance employees whose wages, hours of employment and other conditions of employment are covered by a collective bargaining agreement entitled "General Agreement," effective May 15, 1955, entered into between appellee Western Electric Company, Incorporated, Indianapolis Works, and Local 1504, International Brotherhood of Electrical Workers, A. F. L. (hereinafter referred to as the "IBEW").

The IBEW was the exclusive bargaining agent for approximately 5,900 employees in a bargaining unit of which appellants herein were members, duly designated

and certified by the National Labor Relations Board. Such bargaining agreement contains the following provision in Article 20, Paragraph 3:

"3.  *Scheduling Vacations*

"3.1  Vacations shall be taken during the two-week standard vacation period except for those employees who are required by the Company to work during that period due to the needs of the business. Vacations not scheduled during the standard vacation period will be scheduled in accordance with the employee's wishes to the extent consistent with the needs of the business, giving due consideration to TERM OF EMPLOYMENT."

On January 18, 1955, the employer posted notices on several bulletin boards in the plant, which notices remained on the bulletin boards until after July 31, 1955. These notices read as follows:

"*STANDARD VACATION PERIOD—1955*

"1.  VACATION PERIOD

"1.1  The two week period starting 7/18/1955 and ending 7/31/1955 has been designated as the Standard Vacation Period for 1955.

"2.  SCHEDULING VACATIONS

"2.1  Vacations shall be scheduled during the standard period, any deviation from this period requires Superintendent approval.

Employees eligible to less than two weeks' paid vacation shall take the remainder of the scheduled period at their own expense.

"2.2  Employees eligible to three weeks vacation shall schedule their third week either immediately preceding or following the standard period. Any departure from the scheduling of the third week in this manner will require Superintendent approval.

"MANUFACTURING DIVISION

"Copies to:
"215-2:CW (25)
"All Sections
"Post on All Bulletin Boards."

The employer testified that it is the practice, in the course of the hiring process, that each employee is told that the employer has a standard vacation period of two weeks each year and that during such period all production operations will be closed, and that he will be required to take that period as a vacation without pay if he is not eligible under the provisions of the bargaining agreement or company rules for a vacation with pay. During the shutdown period from July 18, 1955 to July 31, 1955, there was no production work of any kind. The only employees working during such period were maintenance employees, guard force, and such clerical employees as were required to pay bills and handle the payroll. None of the claimants-appellants was eligible for a full two-week vacation with pay, some being eligible for no vacation pay, and others being eligible for vacation pay for only varying portions of the two-week period.

The question whether a claimant is available for work so as to be entitled to unemployment benefit payments is one of fact to be determined by the Review Board. *Youngstown S. & T. Co.* v. *Rev. Bd., E. S. D.* (1954), 124 Ind. App. 273, 277, 116 N. E. 2d 650.

It is the general rule that the decision of the Board as to all questions of fact is conclusive and binding upon the court; and the court will not disturb the decision of the Board "unless reasonable men would be bound to reach a different conclusion on the evidence" in the record. *Youngstown S. & T. Co.* v. *Rev. Bd., E. S. D., supra; Miles* v. *Review Bd.,*

*Emp. Sec. Div.* (1951), 120 Ind. App. 685, 690, 96 N. E. 2d 128.

The provisions of the collective bargaining agreement were part of appellants' individual contracts of employment. *Standard Oil Co.* v. *Review Bd., Emp. Sec. Div.* (1949), 119 Ind. App. 576, 581, 88 N. E. 2d 567.

The IBEW was the exclusive representative of all 5,900 employees, including all of the 301 claimants herein, for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment, and other conditions of employment; National Labor Relations Act, §9(a); 29 U. S. C. A., §159(a); and the collective bargaining agreement here was the voluntary agreement of each of the appellants herein.

The decision of the Review Board is supported by substantial evidence and we are unable to see how reasonable men would be bound to reach a different conclusion on the evidence.

The rule applicable here is ably stated in *Moen* v. *Director of Division of Employment Security* (1949), 324 Mass. 246, 85 N. E. 2d 779, 8 A. L. R. 2d 429, and applied to a contract which provided as follows:

"It is understood and agreed that a period of temporary shutdown in any department for any reason between June 1 and October 1, unless other periods are mutually agreed upon, may be designated as comprising the vacation period for any employees of the department who are eligible for vacations."

The company in the Moen Case shut down the plant for two weeks to enable its employees to take vacations. In holding that claimants who were not eligible for vacation pay were also not entitled to unemployment com-

pensation benefits, the court, at page 781 of 85 N. E. 2d, said:

"To be sure the agreement grants vacations expressly only to those who are eligible and is silent as to employees such as the claimant whose period of employment makes them ineligible for vacations with pay. But it would not, as the claimant concedes, have been feasible for the company to offer employment to him during the shutdown. Thus as to him and employees similarly situated the shutdown was in effect a vacation without pay or a leave of absence, although not designated as such in the agreement. If that results in a hardship to the claimant it arises from the agreement rather than from a failure on the part of the company to provide work."

The decision of the Review Board based on the evidence before it is uniformly supported by the decisions in other jurisdictions where the courts of appeal have been confronted with factual situations similar to that shown by the record here. See: *Kelly* v. *Administrator* (1950), 136 Conn. 482, 72 A. 2d 54; *In Re Emp. Buffelen Lbr. & Mfg. Co.* (1948), 32 Wash. 2d 205, 201 P. 2d 194; *Moen* v. *Director of Division of Employment Security, supra* (1949), 324 Mass. 246, 85 N. E. 2d 779, 8 A. L. R. 2d 429; *Glover* v. *Simmons Company* (1955), 17 N. J. 313, 111 A. 2d 404; *Matter of Naylor* (1954), 281 App. Div. 721, 117 N. Y. S. 2d 775 (affirmed 306 N. Y. 794, 118 N. E. 2d 816) ; *General Electric Co.* v. *Board of Review* (1954), 177 Pa. Super. Ct. 49, 110 A. 2d 258.

*Amer. Bridge Co.* v. *Rev. Bd., Emp. Sec. Div.* (1951), 121 Ind. App. 576, 98 N. E. 2d 193, is fully distinguished from the case at bar by the Review Board, and we concur in its statement concerning this case as hereinabove set out.

The decision of the Review Board herein is supported

by substantial evidence and is in accordance with the rule of law as universally adopted and applied to factual situations similar to that presented by the record in this case, and for these reasons it will be affirmed.

The decision of the Review Board is affirmed.

Arterburn, C. J., Landis and Achor, JJ., concur.

Emmert, J., concurs in result.

NOTE.—Reported in 143 N. E. 2d 564.