GASPRO, LTD., A HAWAII CORPORATION *v.* COMMISSION OF LABOR AND INDUSTRIAL RELATIONS OF THE TERRITORY OF HAWAII, PASTO F. ALICUBEN, AGUEDO O. ABAPO, NARCISO V. AGREGADO, MILTON ALFEREZ, SALVADOR ALOYA, GREGORIO T. ATON, SANTOS AUN, JUAN B. BALDERAS, ANTONIO BAQUIRO, BENANCIO C. BAQUIRO, FRANCISCO M. BARAN, LUCAS BARCILO, DOMINADOR BIACAN, LARRY C. BOLEVAR, GREGORIO BONGO, WILLIAM CABANLET, PAUL CABANLIT, CORNELIO CASABAR, EDMOND T. Y. CHOY, NICOLAS N. CORNIHA, QUIRINO DACOSIN, JOSE M. DANCIL, COSME DANO, GEORGE G. DELA CRUZ, EUGENIO EDRA, JOHN FRANCA, EMETERIO GABRILLO, PABLO C. GUEVARA, ALBERTO R. HAVIER, EDWARD HUGO, PHILLIP LABANG,

PEDRO R. LAPEZ, MAXIMO B. MANIJO, JAMES F. MARIANO, HIDEO NAGANO, FRANCISCO PALMA, FLOR RAMOS, BERNARDO REDULLA, JOSEPH P. REYNON, PEDRO RILLEN, FREDRICO ROMERO, JOSE ROSADA, AMEDIO E. SALAZAR, HENRY A. TABARANZA, CERIACO L. TAGATAC, EUGENIO G. TALAOGON, NICOLAS A. TIMBANG, KENNETH TOLEDO, PERCIVAL TOPINIO, FRANCISCO R. VALIENTE AND FRANCISCO VILLIGAS.

No. 4135.

NOVEMBER 27, 1962.

TSUKIYAMA, C.J., CASSIDY, WIRTZ, JJ., CIRCUIT JUDGE JAMIESON, IN PLACE OF LEWIS, J., DISQUALIFIED, AND CIRCUIT JUDGE TASHIRO, IN PLACE OF MIZUHA, J., DISQUALIFIED.

OPINION OF THE COURT BY WIRTZ, J.

This is an appeal from the judgment on appeal entered on April 3, 1959, by the Circuit Court of the First Circuit, vacating and setting aside the decision of the Referee, Division of Appeals, Bureau of Employment Security, Department of Labor and Industrial Relations of the Territory of Hawaii, in a matter involving the Hawaii Employment Security Law (Chapter 74, Revised Laws of Hawaii 1945, as amended), hereinafter referred to as the "Act," and remanding the cause to the referee for further findings in conformity with its decision.

The Appellees-Appellees filed applications for unemployment compensation on various dates beginning on or about July 22, 1955, the last being filed on or about August 3, 1955. These claimants were employed by Appellant-Appellee, Gaspro, Ltd., at its plants in Honolulu until they were called out on strike on July 10, 1955, by the Hawaii Teamsters and Allied Workers Union, Local 996, AFL-CIO.

On May 23, 1955, the union filed a petition with the local office of the National Labor Relations Board requesting certification as the collective bargaining representative of the employer's employees. On May 26, 1955, the employer received a copy of the petition from the NLRB. Subsequently, and prior to June 10, 1955, representatives of the union and the employer entered into discussions regarding such representation by the union. On June 10, 1955, the employees went out on strike. The strike initially caused a complete or substantial curtailment of work at the employer's establishment.

On or around June 22, 1955, while the strike was still

in progress, the employer, after having urged the claimants to return to work, began hiring new employees to permanently replace the striking claimants. It was not until on or about July 17, 1955, that the employer resumed normal operations.

On October 6, 1955, the Commission of Labor and Industrial Relations of the Territory of Hawaii, Bureau of Employment Security, through its acting administrator, rendered a decision that these claimants were unemployed from June 10, 1955, to July 18, 1955, because of a stoppage of work due to a labor dispute existing at the employer's place of business; that on or about July 18, 1955, the stoppage of work ceased and thereupon the claimants became entitled to unemployment compensation benefits.

The employer appealed this decision of the commission to the referee on the grounds:

"(a) That said claimants, and each of them, are disqualified for benefits under Section 4231(d)[1] of the Act;

"(b) That even assuming no disqualification is imposed upon said claimants under Section 4231(d), each of said claimants left his work voluntarily either without good cause or for a cause not attributable to the Employer and therefore none of the benefits which may be paid any of said claimants are chargeable to the Employer's account."

On February 20, 1956, the referee rendered a decision affirming the decision of the commission. The employer appealed to the circuit court and in the course of this

---

[1]The pertinent portions of R.L.H. 1945, § 4231(d), as amended (now R.L.H. 1955, § 93-29(d), read as follows:

"§ 93-29. *Disqualification for benefits.* An individual shall be disqualified for benefits:

\* \* \* \* \* \* \*

"(d) Labor dispute. For any week with respect to which it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he is or was last employed; \* \* \*."

appeal waived the first six grounds for appeal set forth in its notice of appeal and relied solely on the ground that, whether or not some or all of the claimants became eligible for benefits under the Act after July 18, 1955, such unemployment benefits paid or payable to the claimants were not chargeable against the account of the employer under Section 4250, Revised Laws of Hawaii 1945, as amended. The decision of the circuit court was favorable to the employer on this sole issue, holding that the claimants were not "in the employ" of the employer while they were on strike and that each of the claimants became "separated" from his employment with the employers and "left his work" when he went on strike on June 10, 1955, within the meaning of the "no-charging" provisions of Section 4250, Revised Laws of Hawaii 1945, as amended. Accordingly, this appeal taken by Appellee-Appellant, the commission, from the judgment remanding the cause for further findings rests upon the interpretation and application of Section 4250, Revised Laws of Hawaii 1945, as amended, which is now R.L.H. 1955, § 93-64. The part thereof applicable to this case is as follows:

"*Charges for benefits.* Benefits paid to an individual * * * shall be charged against the accounts of his base period employers * * * except that no such benefits shall be charged against the account of any base period employer from whose employment he became separated under one of the following circumstances: (1) left his work voluntarily without good cause, or (2) was discharged for misconduct connected with his work, or (3) left his work voluntarily for good cause not attributable to the employer."

On this appeal the commission specifies as error the following:

"1. The Circuit Court erred in concluding that

the Referee is required to 'make the findings and conclusions necessitated by the "no charging" provisions of section 4250' inasmuch as 'there is sufficient evidence to support a finding that Claimants left their work for cause "not attributable to the Employer" within the meaning of section 4250.'

"2. The Circuit Court erred in concluding that when the Claimants went on strike on June 10, 1955, each one of them 'left his work voluntarily' within the meaning of section 4250.

"3. The Circuit Court erred in concluding that the Claimants were not 'in the employ' of the Employer while out on strike."

When the claimants went out on strike on June 10, 1955, this resulted in a complete or substantial curtailment of work at the employer's establishment. Resumption of normal operations did not occur until on or about July 17, 1955. During this period the unemployment of the claimants was due to a "stoppage of work" which existed because of a labor dispute and they were disqualified for benefits under the provisions of Section 4231(d), Revised Laws of Hawaii 1945, as amended. However, when the employer hired new employees to replace the claimants and was able to resume normal operations on or about July 17, 1955, the "stoppage of work" ceased at that time and the claimants still unemployed became entitled to benefits under the Act. *Inter-Island Resorts* v. *Akahane*, 46 Haw. 140 (No. 4148 filed concurrently herewith).

The employer does not contest the conclusion that the claimants were not disqualified for unemployment benefits under the provisions of Section 4231(d) at the time they filed claims for such benefits. Nor does the employer now maintain that the claimants "voluntarily left their work" under the disqualification provisions of

Section 4231(a).[2] Employer's position is that "this appeal * * * does not involve any question either as to disqualification or eligibility for benefits. It is concerned solely with the question whether benefits which have been paid to the claimants are properly chargeable against the Employer's account within the intent and purpose of Section 4250. The fact that there was or was not a 'labor dispute' or a 'stoppage of work' does not answer that question." In effect, the employer's position is that while the claimants did not voluntarily leave their work under the disqualification provisions they did so under the "no-charging" provisions of Section 4250.

The employer's principal contention, in support of this position, is that a striker voluntarily leaves his job and no longer is in the employ of the employer. In short, that a strike severs the employer-employee relationship. The argument, based on *National Labor Relations Board v. Mackay Radio & Telegraph Co.*, 304 U.S. 333, is that a striker's employment status is preserved only "for the purpose of the Act [NLRA]" and not for any other purpose and that, on the basis of the rulings of the National Labor Relations Board under the NLRA, a striker is entitled not to be discriminated against, although not as a matter of right, to be restored to his former job. Apart from its limited scope, the point argued fails to undermine the consensus of the courts that have held, in construing unemployment benefit acts, that a strike, of itself, does not sever the employer-employee

---

[2]R.L.H. 1945, § 4231(a), as amended, reads as follows:

"§ 4231. *Disqualification For Benefits.* An individual shall be disqualified for benefits:

"(a) *Voluntary separation.* For any week in which he has left his work voluntarily without good cause attributable to his employing unit and for not less than two or more than seven consecutive weeks of unemployment which immediately follow such week, as determined according to the circumstances in each case."

This section is now R.L.H. 1955, § 93-29(a).

relationship. A worker, in going out on strike, intends to preserve his job, and, if his coercive efforts be success-ful, to put it on a more palatable basis, whether the salve be increased wages, more fringe benefits, better working conditions, or merely in securing a bargaining voice through union representation.

When the claimants went on strike on June 10, 1955, they did not leave their work voluntarily within the meaning of the "voluntary separation" disqualification provisions of Section 4231, Revised Laws of Hawaii 1945, as amended.[3] Further, while they were on strike and prior to being replaced, the employer-employee relation-ship was merely suspended and not severed, but it continued. *Inter-Island Resorts* v. *Akahane, supra.*

The employer, nonetheless, contends that such is not the case in construing the "no-charging" provisions of Section 4250, Revised Laws of Hawaii 1945, as amended, and that the relief therein provided the employer "should not be denied on such illusory grounds as the * * * subtle distinction between a suspension and a severance of the employer-employee relation."

To treat a striker, for the purpose of disqualification under Section 4231, as not having "left his work," but for the purpose of charging benefits under Section 4250 as having voluntarily "left his work" would lead to an anomalous situation, namely, that a striker does not sever his employment relationship for disqualification purposes, but should his disqualification be lifted because of cessation of the work stoppage, then for charging

---

[3]Although Section 4231, R.L.H. 1945, was amended in 1955 by deleting from subsection (a) the phrase "attributable to his employing unit," this does not affect the conclusion reached in the *Inter-Island Resorts* case, decided under a factual situation arising before the amendment, as the focal point of contrast is between the words "left his work vol-untarily without good cause and "unemployment * * * due to a stoppage of work which exists because of a labor dispute" rendering subsections (a) and (d) mutually exclusive.

purposes he is to be considered as voluntarily severing his employment in going out on strike.

To ignore the well established meaning given to terms as used in one part of a statute and to assign a wholly foreign interpretation to identical terms as used in another portion of the statute can only lead to uncertainty and confusion. That a particular interpretation given to a word or phrase in one section of the statute may have an impact on the interpretation of the same word or phrase in another section should be clear. In the absence of an express intention to the contrary, words or phrases used in two or more sections of a statute are presumed to be used in the same sense throughout. 2 Lewis Sutherland, *Statutory Construction*, 2d Ed., § 399, p. 758; 50 Am. Jur., *Statutes*, § 271, p. 259; 82 C.J.S., *Statutes*, § 348, p. 728; *Anderson* v. *Carlson*, 171 Neb. 741, 107 N.W.2d 535; *Moran* v. *Katsinas*, 16 Ill. 2d 169, 157 N.E.2d 38; *State ex rel. Railroad & Warehouse Comm'n* v. *Mees*, 235 Minn. 42, 49 N.W.2d 386; *Dysart* v. *City of St. Louis*, 321 Mo. 514, 11 S.W.2d 1045; *Hood Rubber Co.* v. *Commissioner of Corporations and Taxation*, 268 Mass. 355, 167 N.E. 670. Further, the United States Supreme Court said in *Pampanga Sugar Mills* v. *Trinidad*, 279 U.S. 211:

> "In the absence of express restriction it may be assumed that a term is used throughout a statute in the same sense in which it is first defined."

The term "left his work voluntarily" as used in Sections 4250 and 4231(a) have the same meaning. They mean the volitional severance of the employment relation by a worker. To employ different definitions for the identical phrase used in the two sections would do violence to their construction and muddle the application of the law.

Both the disqualification provision and the no-charging provision for voluntary separation require a finding that an unemployed worker has "left his work voluntarily."

This finding necessarily is made from the same termination of employment. Needless to say, each claimant's act of going out on strike, which the employer argues is tantamount to having "left his work" under Section 4250, remains unchanged whether Section 4231 or Section 4250 is applied. Consequently, the term "left his work voluntarily" can only have the same meaning whether it is applied to Section 4231 or to Section 4250. The only difference is the effect of the two statutory sections. The one, Section 4250, prohibits charging of the employer's account if the voluntary separation is without good cause or for cause not attributable to the employer. The other, Section 4231, disqualifies a claimant for a period if he quits his job without good cause, and as we have held in *Inter-Island Resorts* v. *Akahane, supra,* a striker is not deemed to have "left his work voluntarily."

Moreover, the no-charging provisions of Section 4250 are inoperative until a determination of eligibility and qualification has been made. In this sense they are wholly dependent on the determination of eligibility made under Section 4230 and of qualification under Section 4231.

It should be noted that of the three specifically enumerated grounds for the non-charging of benefits under Section 4250, the first two are replicas of the disqualification provisions of subsections (a) and (b) of Section 4231. Determination of the applicability of these disqualification provisions therefore affords an automatic and adjudicated basis for the application of the no-charging provisions to the payment of benefits after the expiration of the disqualification period. However, the third ground for non-charging of benefits, namely, if a claimant quits his work for good cause which is not attributable to his employer, unlike the first two does not coincide with any disqualification provision but relates to a situation where benefits are automatically payable

without disqualification, but such benefits are not chargeable to the employer's account.

To conclude, as the circuit court did, that there is "sufficient evidence to support a finding that the claimants left their work for a cause 'not attributable to the Employer' within the meaning of Section 4250" would require the application of a basis for "non-charging" other than that upon which the benefits were awarded and despite the fact that benefits were paid after the expiration of a disqualification period other than either of the two disqualification periods required by Section 4250. This is directly contrary to the language of the statute. Here, benefits were paid to the claimants because the "labor dispute" disqualification — not the voluntary leaving nor the discharge for misconduct disqualification — was purged by the cessation of the "work stoppage" and nowhere in Section 4250 nor in any other statutory section of the Act is there a provision for the non-charging of benefits paid in such a situation.

The employer, to support its position that the claimants here voluntarily left their work under the no-charging provisions of Section 4250, cites and relies strongly on the cases of *State* v. *Ruthbell Coal Co.*, 133 W. Va. 319, 56 S.E.2d 549, and *Deere Mfg. Co.* v. *Iowa Employment Security Comm'n*, 249 Iowa 1066, 90 N.W.2d 750. Both these cases are factually distinguishable as they are concerned with claimants who were not involved in a labor dispute nor out on strike but who refused to cross picket lines set up by a union of which they were not members. In the *Deere Mfg. Co.* case the sole issue resolved was that workers who refuse to cross picket lines established by another striking group are deemed to have left their work voluntarily without good cause attributable to the employer under the disqualification provisions. Under such circumstances the court in the *Ruthbell* case

determined that the claimants were not unemployed because of a stoppage of work caused by a labor dispute under the disqualification provisions but had left their work voluntarily for good cause not attributable to the employer and consistently held that the employer's account was not chargeable with the benefits allowed them.

*Johnson* v. *La Grange Shoe Corp.*, 244 Minn. 354, 70 N.W.2d 335, and *Adams* v. *Review Board*, 237 Ind. 63, 143 N.E.2d 564, cited by the employer, are likewise inapplicable. Both these cases involve the question of whether claimants, who were ineligible for vacation pay during a shutdown brought about because of a collective bargaining agreement on standard vacations, are eligible for unemployment benefits during the unemployment caused by the shutdown. In both cases the court held that inasmuch as the claimants were members of the bargaining representatives which entered into the agreement, they were voluntarily unemployed and hence ineligible for benefits.

*Re Matsuoka and Maui Pineapple Co.* (Referee's Decision R-797, Sept. 10, 1956), also cited by the employer, was primarily concerned with the construction of the language "discharge for misconduct" as it is used in the disqualification provisions. The interpretation of the phrase "voluntarily left his work" was not in issue.

The legislative history of the Act supports the interdependence of Sections 4231 and 4250, Revised Laws of Hawaii 1945, as amended, and requires that the term "voluntarily left his work" be given the same meaning in both sections. The "no-charging" provisions in Section 4250 were first enacted in 1949. Prior to that time all benefits paid were charged against the employer's account. Act 316, S.L., 1949, amended Section 4250 by providing that benefits shall not be charged against the

account of an employer from whose employment the claimant became separated under circumstances which would initially disqualify him under subsections (a) and (b) of Section 4231. Subsection (a) disqualified a claimant if he "left his work voluntarily without good cause attributable to his employing unit," and subsection (b) disqualified a claimant if he was discharged for misconduct connected with his work.

The legislature, in granting this relief, specifically referred to the two subsections and thereby limited the "non-charging" of benefits only to those situations which would initially disqualify the claimants under these two particular subsections. Thus, without first determining the initial disqualifications under either of subsections (a) or (b), the employer's account could not be relieved of benefits paid to the claimant after the disqualification period was terminated.

In 1955, by Act 80, S.L. 1955, the "no-charging" provisions of Section 4250 were further amended. The references to subsections (a) and (b) of Section 4231 were deleted and the circumstances of a claimant's separation which would relieve the employer of benefit charges were specifically spelled out to include the following: "(1) left his work voluntarily without good cause, or (2) was discharged for misconduct connected with his work, or (3) left his work voluntarily for good cause not attributable to the employer." However, this amendment did not actually make any substantive changes in the "no-charging" provisions. Both the 1949 and 1955 amendments provided that the employer's account was not chargeable with benefits paid to a claimant who left his work without good cause or for cause not attributable to the employer, or paid to a claimant who was discharged for misconduct. The 1955 amendment neither enlarged nor diminished the relief granted in 1949. The legis-

lature intended that the relief granted under the 1949 amendment remain unchanged. However, because under the same Act 80, subsection (a) of Section 4231 was amended to provide that a claimant should not be disqualified if he left his work for a good cause,[4] the wording of the "no-charging" provisions had to be modified to retain the substantive relief of the 1949 amendment. In making this technical change to retain the benefits heretofore granted the employer under the 1949 amendment, the legislature in 1955 purposely used identical phrases of "left his work voluntarily" and "discharge for misconduct connected with his work" found in the disqualification provisions of subsections (a) and (b) of Section 4231.

Under either the 1949 or 1955 amendment a determination as to initial disqualification under Section 4231 must first be made before any consideration can be given to the provisions of Section 4250 in relief of the employer's account. Without a prior determination that claimant's unemployment was due to his having "voluntarily left his work" or to a "discharge because of misconduct connected with his work" under subsections (a) and (b) of Section 4231, employer's account could not be relieved of any of the benefits paid to the claimant.

This legislative history clearly shows the interdependence of Sections 4231 and 4250 and that unless a determination of voluntary separation or discharge for misconduct under Section 4231 is first made, the no-charging provisions of Section 4250 are inapplicable. Nonetheless, the employer would have us ignore the application of the disqualification provisions of Section 4231

---

[4]Act 80, S.L. 1955, amended subsection (a) of Section 4231 by deleting the words "attributable to his employing unit" appearing after the words "left his work voluntarily without good cause." This amendment affected a liberalization of the compensation provisions of the Act so that a worker would no longer be disqualified for benefits under that subsection if he left his work voluntarily for a good cause which was not attributable to his employer.

and confine ourselves solely to the construction of terms used in the "no-charging" provisions of Section 4250. The employer argues that there is "an erroneous conception of the interdependence of Section 4231 and Section 4250," inasmuch as since the 1955 amendment there has been "no duty under Section 4231 to determine whether the cause for an individual leaving his work is a cause 'attributable to the employer,'" while Section 4250 requires such a determination. "This determination," the employer continues, "does not depend upon any findings made under Section 4231, for the obvious reason that the crucial clause — 'not attributable to the employer' — appears only in Section 4250."

While it is true that a finding of cause "attributable to the employer" is not required under Section 4231, it does not necessarily follow that such a finding under Section 4250 is not dependent on the basic determinations required under Section 4231. Before any inquiry as to the cause of quitting a job can be made, a claimant must first be found to have "voluntarily left his work" under Section 4231. If such was without good cause, no further inquiry is necessary. If, however, it is found that he had good cause, then and only then is it required that a finding be made as to whether the cause is attributable to the employer. Contrary to the contention of the employer that the determination of cause attributable to the employer "does not depend upon any findings made under Section 4231," this determination actually can only be the outgrowth of the prior finding that a claimant "voluntarily left his work" under Section 4231.

As we have seen in the *Inter-Island Resorts* case, filed concurrently herewith, one of the fundamental principles of the unemployment insurance program is that the unemployment agency remain neutral in cases where claimants are unemployed because of a "labor

dispute." The rationale of the neutrality doctrine is that the unemployment agency should not favor one party at the expense of the other, but should leave both parties in the status quo with respect to all their rights, privileges and obligations apart from those required by the unemployment insurance laws and in the application of the unemployment insurance laws there should be no distinction, whether the question of neutrality arises under the disqualification provisions or under the no-charging provisions.

The employer intimates, however, that to charge the account of the employer for benefits paid a striker is in violation of the principle of neutrality, as such would require "* * * that the individuals who leave their work voluntarily to engage in a strike must, as a matter of law, be held to have left work for a 'good cause' which is 'attributable to the employer' within the meaning of Section 4250, if such individuals are paid benefits under the Act after their disqualification for benefits is held to have ended under Section 4231(d)." This is to beg the very question before us, which is, whether or not strikers *"leave their work voluntarily to engage in a strike."* So it does not follow that a striker must, as a matter of law, be "held to have *left work for a 'good cause' which is 'attributable to the employer.'* " A claimant whose unemployment is due to a "stoppage of work" which exists because of a "labor dispute" is not considered to have "voluntarily left his work" within the meaning of the employment security law. Consequently, the cause for leaving is immaterial and need not be determined. There is then no requirement to determine the cause and reasonableness of the strike in violation of the neutrality principle.

Furthermore, if a striker is deemed to have "voluntarily left his work" with or without good cause, benefits

automatically become payable. If there is good cause, payments start immediately; if such is without good cause, payments begin after a disqualification period expires. So, in either case, if the strike continues during the weeks benefits are payable, the commission, by making a determination as to the cause for leaving, could then properly be accused of aiding the strikers and financing the strike.

The employer subscribes to the principle of neutrality insofar as it applies to the disqualification of claimants, while ignoring it with respect to the charging of benefits against its account. The employer agrees that when claimants become unemployed because of a strike the commission should, under the "labor dispute" disqualification provisions of Section 4231(d), remain neutral and refrain from determining the justice or reasonableness of the. cause of the strike. But when the employer successfully thwarts a strike and returns to normal operations of its business by hiring replacements, it suggests that the principle of neutrality be overlooked for the purpose of inquiring whether the workers had good cause in going out on strike solely to determine whether its account should or should not be charged under Section 4250. To hold that the claimants, who originally went out on strike should, after the cessation of the "work stoppage," and after being, during the duration of the "work stoppage," disqualified by the labor dispute provision from receiving benefits, nonetheless be considered to have "left [their] work voluntarily for good cause not attributable to the employer" so as to relieve the employer's account, under Section 4250, from the payment of benefits, would be to hold that the claimants were wrongfully on strike originally; were not justified in striking; that the strike was their own fault, and that they were unemployed through their own fault.

That the employer suffered detrimental effects as a consequence of the strike is understandable, but to insist that this court should relieve it from being charged with benefits paid to the strikers after the disqualification was purged is an exhortation without legal basis. Relief lies not with this court, it lies solely with the legislature. We do not dispute the fact that the no-charging provisions are remedial in nature, and are aware of the general rule of construction that remedial statutes are entitled to a liberal interpretation in favor of the remedy provided by law, or in favor of those entitled to the benefits of the statute (*Shillaber* v. *Waldo,* 1 Haw. 31; 50 Am. Jur., *Statutes,* § 392, p. 415), but such a rule does not authorize a departure from the plain and obvious language used by the legislature nor permit a forced or unnatural construction thereof.

The principle that we are powerless to judicially legislate is amply expressed in the language of Mr. Justice Stone in *Carmichael* v. *Southern Coal Co.,* 301 U.S. 495, upholding the Unemployment Compensation Act of Alabama, at page 525:

"If the question were ours to decide, we could not say that the legislature, in adopting the present scheme rather than another, had no basis for its choice, or was arbitrary or unreasonable in its action. But, as the state is free to distribute the burden of a tax without regard to the particular purpose for which it is to be used, there is no warrant in the Constitution for setting the tax aside because a court thinks that it could have drawn a better statute or could have distributed the burden more wisely. Those are functions reserved for the legislature.

"Since the [contributing employer] may not complain if the expenditure has no relation to the taxed class of which they are members, they obviously may

not complain because the expenditure has *some* relation to that class, that those benefited are employees of those taxed; or because the legislature has adopted the expedient of spreading the burden of the tax to the consuming public by imposing it upon those who make and sell commodities. It is irrelevant to the permissible exercise of the power to tax that some pay the tax who have not occasioned its expenditure, or that in the course of the use of its proceeds for a public purpose the legislature has benefited individuals, who may or may not be related to those who are taxed."

Reversed and remanded for entry of a judgment reinstating and affirming the Decision of the Referee, Division of Appeals, Bureau of Employment Security, Department of Labor and Industrial Relations of the State of Hawaii, entered on February 20, 1956.

*Moore, Torkildson & Rice (R. M. Torkildson)* for Appellant-Appellee.

*Toshimi Sodetani,* Deputy Attorney General, for Appellee-Appellant.