Claris J. POPE, Barbara A. Barnes, Linda D. Gragg, Brenda Phegley, Mary Small, Phyliss K. Sharum, Carolyn Scott, Georgia Riddle, Karen Taggert, Elizabeth A. Richardson, Ella Mitchell, Alberta S. Parish, Beverly J. Richardson, Nancy Hendrixson, Janice Haney, Janet R. Haney, Delores A. Brown, Ellen Bullock, and Helen Adams, Claimants-Appellants,

v.

WABASH VALLEY HUMAN SERVICES, INC. and Indiana Employment Security Division, Employer-Appellees.

No. 93A02–8603–EX–87.

Court of Appeals of Indiana, Third District.

Nov. 18, 1986.

Gary R. Brock, Currier & Brock, Bicknell, for claimants-appellants.

Bruce A. Smith, Sturm, Smith & Webster, Vincennes, for employer-appellees.

GARRARD, Judge.

*Facts*

Wabash Valley Human Services, Inc. (employer) is a not-for-profit corporation which receives federal funding for its Head Start Program. Due to federal financial assistance cutbacks, the employer, in 1983, instituted a deferred payment policy which provided that Head Start employees would be paid a nine month salary prorated over twelve months. This payment plan was included in an employment contract which also guaranteed the Head Start employees employment for twelve months, from May 26, 1984 through May 24, 1985, but designated May 26, 1984 through September 3, 1984 as a vacation period during which the employees would not work. (Record, pp. 141–42). After having consulted with and being advised by legal counsel, Claris J. Pope and seventeen other Head Start employees (employees) signed the contract of employment.

In June, 1984 the employees appeared before the deputy of the Indiana Employment Security Division for a determination of their eligibility for unemployment benefits for the summer months of 1984. The deputy's determination that the employees were eligible for such benefits was set aside and the case remanded for a *de novo* consolidated hearing before John Metz, an Indiana Employment Security Division referee.[1]

On June 17, 1985 Metz found, *inter alia*, that the employees, after having consulted with and having been advised by legal counsel, signed the employment contract of their own volition and thus, were not "unemployed" within the meaning contemplated by Chapter 14, Section 7 of the Indiana Employment Security Act,[2] and not

---

1. The Review Board remanded this case because the tapes of the deputy's hearing had been erased and thus, a transcript of the hearing could not be provided for review.

2. IC 22–4–14–7 provides in pertinent part:
   "Sec. 7. Benefits based on service in employment defined in IC 22–4–8–2(i) and (j) shall be payable in the same amount, on the terms and subject to the same conditions as compensation payable on the basis of other service subject to this article, unless otherwise specifically provided, except that:
   (1) benefits based on service in an instructional, research, or principal administrative capacity in an institution of higher education (as defined in IC 22–4–2–31) shall not be paid to an individual for any week of unemployment which begins during the period between two (2) successive academic years, or during a similar period between two (2) regular terms, whether or not successive, or during a period of paid sabbatical leave provided for in the individual's contract, if the individual has a contract or contracts to perform services in any such capacity for any institution or institutions of higher education for both such academic years or both such terms, or if there is a reasonable assurance that the individual will perform services in an instructional, research, or principal administrative capacity in the second of the academic years or terms;
   "(2) with respect to service performed after December 31, 1977, in an instructional, research, or principal administrative capacity for an educational institution (other than an institution of higher education as defined in IC 22–4–2–31), benefits may not be paid based on the service for any week of unemployment commencing during the period between two (2) successive academic years, or terms, or during the period between two (2) regular but not successive terms, or during a period of paid sabbatical leave provided for in the individual's contract, to any individual if the individual performs the services in the first of the academic years or terms and if there is a contract or a reasonable

eligible for unemployment compensation. The Indiana Employment Security Division Review Board (Review Board) later affirmed and adopted Metz's findings of facts and conclusions of law in this case. The employees now appeal this decision.

### Issues

On appeal, the employees raise the following issues:

I. Whether the employees were voluntarily unemployed and thus ineligible for unemployment benefits under the Indiana Employment Security Act.

II. Whether the parties' employment contract which provides for a deferred payment plan violates IC 22-2-5-1 governing semi-monthly and bi-weekly payment plans.

### Discussion

### I. "Voluntarily" Unemployed

■ Initially the employees argue that they were not "voluntarily" unemployed during the vacation period provided for in their contracts of employment because the contracts were not negotiable and did not result from collective bargaining. The employees further argue that their "unemployment" pursuant to the employment contract was not "voluntary" or through their own volition because the alternative to signing the contracts was to not be hired by the employer. Hence, the employees urge, the Review Board's determination that the employees were voluntarily unemployed was erroneous and should be reversed. We disagree.

The Court of Appeals is bound by the factual determinations of the Review Board and will neither weigh the evidence nor judge the credibility of witnesses. *Mead*

*Johnson v. Review Bd. of Indiana Emp. Sec. Div.* (1984), Ind.App., 463 N.E.2d 537, 538. We believe the Review Board's determination that the employees were "voluntarily" unemployed and thus ineligible for benefits is supported by the evidence and free of reversible error.

It is well established in Indiana that in order to collect benefits under the Indiana Employment Security Act the claimant must be unemployed. Where the employment contract or collective bargaining agreement provides for a shutdown or vacation period, the employees who signed or assented to the contract are not "unemployed" within the meaning contemplated by the Indiana Employment Security Act. *Adams v. Review Board* (1957), 237 Ind. 63, 143 N.E.2d 564; *Tokheim Corp. v. Review Board* (1982), Ind.App., 440 N.E.2d 1141, 1142; and *Lynch Corp. v. Rev. Bd.* (1968), 141 Ind.App. 694, 232 N.E.2d 619. The rationale underlying our courts' position is that unemployment compensation, as provided under the Act, is aimed at providing assistance to those persons unemployed "through no fault of their own; fault meaning volition." *Tokheim, supra,* at 1142. An employee's volition is most clearly expressed by his agreement to the employment contract. *Id.* Thus, if an employee signs or assents to an employment contract which provides for a mandatory shutdown or vacation period, then the employee is voluntarily unemployed during the shutdown or vacation period and is thereby ineligible for unemployment benefits. This is the case before us today.

The employees in the instant case were represented by an attorney who reviewed the contract and advised the employees to

assurance that the individual will perform services in an instructional, research, or principal administrative capacity for any educational institution (other than an institution of higher education as defined in IC 22-4-2-31) in the second of the academic years or terms;

(3) with respect to services performed after December 31, 1977, in any capacity (other than those listed in subdivision (2) of this section) for an educational institution (other than an institu-

tion of higher education as defined in IC 22-4-2-31), benefits may not be paid based on the service of an individual for any week which commences during a period between two (2) successive academic years or terms if the individual performs the service in the first of the academic years or terms and there is reasonable assurance that the individual will perform the service in the second of the academic years or terms."

sign the employment contract.[3] The employees were faced with the same alternatives in this transaction that they would have had through collective bargaining, namely, the employees could have chosen to not sign and risked not being hired by the employer.[4] Instead, in the absence of any coercion or improper influence by the employer, the employees voluntarily chose to sign the employment contracts with full knowledge of the mandatory vacation period provided therein. We believe that based on this evidence, reasonable men would agree with the Review Board's determination that the employees "voluntarily" entered into the employment contracts and, therefore, were "voluntarily" unemployed and ineligible for unemployment benefits. We agree and affirm the Review Board's decision.[5]

## II. Semi-Monthly or Bi-Weekly Payment and the Employee "Request" Requirement

Next, the employees urge that the employer's deferred payment plan as provided in their employment contracts violates IC 22-2-5-1 which provides:

"Every person, firm, corporation or association, their trustees, lessees or receivers appointed by any court whatsoever doing business in this state shall pay each employee thereof at least semimonthly or bi-weekly, *if requested,* the amount due such employee and such payment shall be made in the lawful money of the United States or by negotiable check, draft or money order and any contract to the contrary shall be void." [6] (our emphasis added.)

■ IC 22-2-5-1, *et seq.* is a penal statute which is in derogation of the common law and must be strictly construed. *Palmer v. Stockberger* (1963), 135 Ind.App. 263, 193 N.E.2d 384, 387. We agree with the court in *Wilson, supra,* when it stated:

"A close examination of the language of the statute makes clear that it is concerned with the time of payment of wages. Its thrust is to create a statutory requirement that wages be paid semi-monthly or bi-weekly if so requested by the employee. This limited scope becomes more evident when one considers the remainder of the statute, which sets out when an employer need pay wages due after the employee terminates his employment."

610 F.Supp. at 1038. It is essential to a successful assertion of claim under IC 22-

---

**3.** The employees attempted to distinguish *Adams, Lynch* and *Tokheim* on the basis that these cases involved a collective bargaining agreement which made the employee's assent to such agreements more "voluntary" than assent to a mere employment contract absent collective bargaining, as is in the instant case. The employees' attempt to distinguish these cases is unavailing in that the courts in *Adams, Lynch* and *Tokheim* neither made any effort to limit their holdings to cases involving collective bargaining agreements, nor did the courts intimate that the collective bargaining aspect, itself, made the contracts voluntary. Furthermore, we believe that the courts' emphasis in *Adams, Lynch* and *Tokheim* was on the employee's volitional assent to the employment contract rather than whether the contract came into existence through collective bargaining or by some other means.

**4.** We acknowledge that the employees in the present case may have had more bargaining power through collective bargaining, and that there may have been an imbalance of bargaining power between the employer and employee

absent collective bargaining. However, a mere imbalance of bargaining power is insufficient to justify our holding that the employees' assent to the employment contract was not "voluntary."

**5.** The employees also alleged in their brief that the Board's decision was erroneous in that during the summer, 1984, the employees received no "deductible income" as defined in IC 22-4-5-1. Therefore, they contend, the employees were eligible for unemployment benefits. In light of our holding that the employees were voluntarily unemployed during the summer, 1984, and thus, ineligible for unemployment benefits, we find it unnecessary to address this argument.

**6.** An employer's failure to pay, upon the employee's request, in accordance with the terms provided in IC 22-2-5-1 activates the penalty provisions of IC 22-2-5-2 which allows an employee recovery against his employer of any unpaid wages plus a maximum penalty of twice the amount of unpaid wages as well as legal fees and costs. *See* IC 22-2-5-2; and *Wilson v. Montgomery Ward & Co.* (N.D.Ind.1985), 610 F.Supp. 1035, 1038.

2–5–1 that the employee make a request for bi-weekly or semi-monthly payment and that such request have been made "prior to or concurrent with the period of employment" at issue "and not after a wage dispute has arisen." *City of Logansport v. Remley* (1983), Ind.App., 453 N.E.2d 326, 328 (citing *Palmer, supra*, 193 N.E.2d at 388); and *American Bus Lines v. Page* (1978), 176 Ind.App. 5, 373 N.E.2d 928, 934.[7] Consistent with the paramount policy of preserving the parties' right to freedom to contract, if the employee does not make the requisite "demand" or "request" for payment under the statute, then the employer and employee may agree to a method of payment other than "semi-monthly" or "bi-weekly." *American Bus Lines, supra*, 373 N.E.2d at 934.

In the present case, the employees have not shown and the record does not reveal that they made a "request" or "demand" for "semi-monthly" or "bi-weekly" payment. The record shows only that the employees first objected to the agreed manner of payment when a dispute had arisen and before the Review Board. This was too late. In viewing the facts in a light most favorable to the Review Board's decision we find that the employees failed to make the requisite "request" in a timely fashion and, therefore, the parties were free to agree to the deferred payment plan included in the employment contract. We believe that the employment contract was not violative of IC 22–2–5–1.

Finally the employees, in a single-paragraph discussion, argue that the employment contract at issue somehow violated the Federal Unemployment Tax Act, 26 U.S.C. Sections 3301–3311 (1982) (FUTA). This argument is fatally defective due to its failure to clearly demonstrate how FUTA applies to the present case and specifically how the employment contract is inconsistent with FUTA.

The appellant has the burden to clearly present its contentions regarding the issues at hand, and its supporting reasons, with any applicable citation to authorities, statutes and sections of the record relied upon. The appellant must clearly show how the issues and its contentions relate to the facts of the case under review. Indiana Rules of Procedure, Appellate Rule 8.3(A)(7); and *Shuee v. Gedert* (1979), 182 Ind.App. 432, 395 N.E.2d 804. Mere conclusory arguments do not discharge the appellant's burden of establishing reversible error. *Shuee, supra*. Furthermore, when a party has failed to properly argue its case, we as a reviewing court will not search the record for reversible error. *Piwowar v. Washington Lumber and Coal Co.* (1980), Ind.App., 405 N.E.2d 576. In light of the employees' failure to demonstrate reversible error, we affirm the Review Board's decision.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.

---

**7.** The employee's "request" must *precede* the work period for which the unpaid wages are due and for which liability is later asserted. Liability cannot be posited for wages earned

before the request was made. *American Bus Lines, supra*, 373 N.E.2d at 935 (Garrard, J., concurring).