John D. GIOVANONI II, Appellant (Plaintiff below),

v.

REVIEW BOARD OF the INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT and Clarian Health Partners, Inc., Appellees (Defendants below).

No. 93S02–0907–EX–311.

Supreme Court of Indiana.

June 1, 2010.

Delmar P. Kuchaes II, Bargersville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ashley E. Tatman, Heather L. Hagan, Frances Barrow, Deputy Attorneys General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Indiana's Unemployment Compensation Act provides "benefits to persons unem-

ployed through no fault of their own...."
Ind.Code § 22–4–1–1. In this case, an
employer's attendance policy subjected an
employee to discharge for exceeding the
permitted number of absences, whether
excused or unexcused. Under the Act as
written at the time of the employee's dis-
charge, violation of the attendance policy
did not disqualify the employee from un-
employment compensation because the
employee had been discharged through no
fault of his own.

## Background

John D. Giovanoni was a pharmacy tech-
nician employed from November 15, 2006,
through December 26, 2007, by Clarian
Health Partners, Inc. ("Clarian"), which
operated the inpatient pharmacy at Riley
Hospital for Children. Clarian's written
attendance policy was a "no-fault" policy
where all unscheduled absences were con-
sidered equal regardless of the reasons for
the absences unless they fit within quali-
fied exceptions identified within the poli-
cy.[1] The policy provided for progressive
discipline beginning with the accumulation
of five "occurrences" (instances of tardi-
ness or absence) in any rolling 12–month
period, and ending with termination after
eight occurrences in any such period. An
administrative law judge ("ALJ") for the
Review Board of the Department of Work-
force Development found that the attend-
ance policy "is essential to [Clarian] as
attendance is critical as patients need to be
able to receive their medications when nec-
essary." (Appellant's App. at 5.)

During the term of his employment,
Giovanoni began to experience a severe
medical condition identified as an ara-

chnoid cyst in his brain that caused sei-
zures and debilitating migraines. Aware
of the attendance policy, Giovanoni made a
concerted effort to come to work, even
when his condition rendered him largely
unable to perform his duties. Despite his
efforts, Giovanoni accumulated seven oc-
currences as a result of his medical condi-
tion; he received written warnings on the
last three of these, and the pharmacy man-
ager met with him following the seventh
occurrence.[2]

On December 16, 2007, Giovanoni had
his eighth occurrence, due to hazardous
road conditions caused by severe winter
weather, and was terminated a few days
later. Giovanoni sought unemployment
benefits. Although a claims deputy origi-
nally granted Giovanoni's request, an ALJ
reversed the decision of the deputy on
Clarian's appeal. The Review Board sum-
marily affirmed the ALJ's findings of fact
and conclusions of law.

A divided panel of the Court of Appeals
reversed, holding that Giovanoni was not
discharged for just cause and therefore
was entitled to unemployment benefits.
*Giovanoni v. Rev. Bd. of Ind. Dep't of
Workforce Dev.*, 900 N.E.2d 437 (Ind.Ct.
App.2009). Judge Brown dissented.

The Review Board sought, and we
granted, transfer, thereby vacating the
opinion of the Court Appeals. Ind. Appel-
late Rule 58(A).

## Discussion

### I

■ The Indiana Unemployment Com-
pensation Act (the "Act"), Indiana Code
art. 22–4, provides benefits to those who

---

1. The qualified exceptions enumerated by the policy are not at issue in this case.

2. Because all of Giovanoni's absences for medical illness occurred within the first year of his employment with Clarian, he did not qualify under the provisions of the federal

Family Medical Leave Act ("FMLA") that pro-
tects employees from discharge and other ad-
verse employer actions for absences pursuant
to a qualifying illness. *See* 29 U.S.C. § 2601
(2006).

are out of work through no fault of their own. To be eligible for benefits, an individual must meet the requirements set forth in Indiana Code ch. 22–4–14. Unemployment insurance benefits, however, are not an unqualified right and may be denied to claimants who are disqualified by any of the various exceptions provided in ch. 22–4–15. Specifically, an individual is disqualified if discharged for "just cause." I.C. § 22–4–15–1.[3] "Just cause" is defined in subsection (d) to include the following: "(2) [an employee's] knowing violation of a reasonable and uniformly enforced rule of an employer; [and] (3) . . . unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness[.]" I.C. § 22–4–15–1(d)(2)–(3).

The central issue in this appeal concerns the construction and interpretation of these two exceptions as a basis for disqualification of unemployment insurance benefits where an employee is discharged for violation of a "no-fault" attendance rule. In this case, the ALJ and the Board denied Giovanoni's application for benefits under section 22–4–15–1(d)(2) ("subsection (d)(2)"), reasoning that Clarian's policy was a reasonable rule and Giovanoni's violation of this rule disqualified him from eligibility for unemployment insurance benefits.

■ To make out a prima facie case of termination for just cause based on a violation of an employer attendance rule so as to disqualify a former employee from receiving unemployment insurance benefits under subsection (d)(2), the employer must show that the employee: (1) knowingly violated, (2) a reasonable, and (3)

uniformly enforced rule.[4] *McClain v. Rev. Bd. of Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1318 (Ind.1998). An employer's attendance rule is reasonable, as is required for the employer to deny unemployment compensation to a claimant fired for violating the rule, if the rule protects the interests of employees as well as those of the employer. *Jeffboat, Inc. v. Rev. Bd. of Ind. Emp. Sec. Div.*, 464 N.E.2d 377, 380 (Ind.Ct.App.1984).

■ In contrast, it is well established law that under subsection (d)(3) of the Act, just cause for termination should not be found where an employee's absence or tardiness is beyond the employee's control. "Most every wage earner, at various periods during his productive life, faces family emergencies and matters of urgent personal nature. Such absences may if reasonable and not habitual be excused." *White v. Rev. Bd. of Ind. Emp. Sec. Div.*, 151 Ind.App. 426, 431, 280 N.E.2d 64, 67 (1972). While a just-cause termination analysis pursuant to subsection (d)(3) assesses the legitimacy of the employee's justifications for excessive absenteeism and tardiness, discharge for excessive absenteeism pursuant to an attendance policy analyzed under subsection (d)(2) does not, on its face, require such individualized analysis, but instead looks only to the reasonableness of the rule.

In light of these conflicting interpretations, the Court of Appeals has been divided on the reasonableness of no-fault attendance policies under subsection (d)(2). In some instances, the Court of Appeals has held that because such policies subject

---

3. Amendments were made to this section of the Act by the Legislature in 2009, including provisions directly addressing the issues raised by this litigation. 2009 Ind. Acts 1831, P.L. 175–2009, § 23, effective July 1, 2009. We express no opinion as to the statute as amended.

4. Giovanoni does not challenge the knowledge or uniform enforcement prongs of this standard, but rather whether Clarian's policy is reasonable as a matter of law.

an employee to discharge for excused and unexcused absences, they are per se unreasonable and discharge for unsatisfactory attendance is more appropriately analyzed under subsection (d)(3). *Giovanoni,* 900 N.E.2d at 443 ("[A]n attendance rule that subjects an employee to discharge for excused as well as unexcused absences is per se unreasonable, but an employee who is discharged for problem attendance will be disqualified from unemployment benefits if the employee cannot show good cause." (citing *Love v. Heritage House Convalescent Ctr.,* 463 N.E.2d 478 (Ind.Ct. App.1983))); *accord Parkison v. James River Corp.,* 659 N.E.2d 690 (Ind.Ct.App. 1996). In other cases, the Court of Appeals has held that a no-fault attendance policy is not per se unreasonable solely because some absences caused by illness could result in termination. *Beckingham v. Rev. Bd. of Ind. Dep't of Workforce Dev.,* 903 N.E.2d 477, 482 (Ind.Ct.App. 2009) ("[A]n employer's attendance plan is not *per se* unreasonable simply because it allows excused absences and/or absences caused by illness to be included toward the benchmark at which an employee has been excessively absent and will be discharged.") *rev'd,* 927 N.E.2d 913 (Ind. 2010); *Beene v. Rev. Bd. of Ind. Dep't of Emp. & Training Servs.,* 528 N.E.2d 842, 846 (Ind.Ct.App.1988) ("The fact that [claimant]'s absences and tardiness were allegedly caused from occurrences 'beyond her control' is not the litmus test in Indiana.... As long as the [e]mployer puts forth a prima facie case for discharge under [subsection (d)(2) ], insufficiently rebutted by the employee, the employee's discharge and denial of benefits can be upheld." (citing *Jeffboat,* 464 N.E.2d at 380)).

## II

In the words of the Legislature, the purpose of the Indiana Unemployment Compensation Act is

to provide for payment of benefits to persons unemployed *through no fault of their own,* to encourage stabilization in employment, and to provide for integrated employment and training services in support of state economic development programs, and to provide maximum job training and employment opportunities for the unemployed, underemployed, the economically disadvantaged, dislocated workers, and others with substantial barriers to employment, is, therefore, essential to public welfare; and the same is declared to be a proper exercise of the police powers of the state.

I.C. § 22–4–1–1 (emphasis added).

In light of the Legislature's pronouncement, "just cause" determinations, as they pertain to an employee's discharge, must be consistent with the legislative purpose underlying the Act—to provide financial assistance to an individual who had worked, was able and willing to work, but through no fault of his or her own, is temporarily without employment. Disqualification is inappropriate if the totality of the circumstances establishes that a claimant is unemployed through no fault of his own. At a minimum, the claimant must have performed some volitional act or have exercised some control over the circumstances resulting in the discharge from employment. *See Wakshlag v. Rev. Bd. of Ind. Emp. Sec. Div.,* 413 N.E.2d 1078, 1082 (Ind.Ct.App.1980) (holding that under a previous version of the Act the terms " 'fault[ ]' [and] 'just cause' ... mean[ ] *failure* or *volition,* and do[ ] not mean something blameworthy, culpable, or worthy of censure." (emphases added)). "In this regard, whether unemployed persons are without fault must be determined upon the facts and circumstances of the individual case." *White,* 151 Ind.App. at 431, 280 N.E.2d at 67 (citing *Thompson v.*

*Hygrade Food Prods. Corp.*, 137 Ind.App. 591, 210 N.E.2d 388 (1965)).

■ Whether the analysis proceeds under subsection (d)(2) or (d)(3), the purpose of the Act must be carried out. Thus, the law will not countenance the denial of unemployment compensation under a "no-fault" attendance policy unless and until a determination is made for just cause in a way that gives full power and effect to the Legislature's mandate. And just cause, as it relates to absenteeism, demands an individualized analysis of whether the employee violated the policy through no fault of his or her own.

Many states have held that excessive absences, necessitated by circumstances beyond the employee's control, are not willful misconduct for the purpose of disqualifying an employee from receipt of unemployment benefits. *Washington v. Amway Grand Plaza*, 135 Mich.App. 652, 354 N.W.2d 299, 302 (1984) ("[I]t is well established that what may justify discharge from employment does not necessarily constitute statutory misconduct sufficient to disqualify the employee for unemployment benefits."); *Kelley v. Manor Grove, Inc.*, 936 S.W.2d 874 (Mo.Ct.App.1997); *McCourtney v. Imprimis Tech., Inc.*, 465 N.W.2d 721, 724 (Minn.Ct.App.1991); *Vester v. Bd. of Rev. of Okla. Emp. Sec. Comm'n*, 697 P.2d 533, 538 (Okla.1985); *Tynes v. Uniroyal Tire Co.*, 679 P.2d 1310, 1313 (Okla.Ct.App.1984).[5] In addition, three states have held that termination pursuant to a "no-fault" attendance policy still requires an individualized inquiry into the reasons behind the absenteeism to disqualify an employee from receipt of unemployment benefits. *See Gonzales v. In-*

*dus. Comm'n*, 740 P.2d 999, 1003 (Colo. 1987); *Alliant Health Sys. v. Ky. Unemp. Ins. Comm'n*, 912 S.W.2d 452, 454 (Ky.Ct. App.1995); *Gillespie v. Commonwealth, Unemp. Comp. Bd. of Rev.*, 105 Pa. Cmwlth. 243, 523 A.2d 1205, 1207 (1987). *Contra Sutherlin v. Interstate Brands Corp.*, 79 Ohio App.3d 635, 607 N.E.2d 1076 (1992) (per curiam) (rejecting the argument that a no-fault attendance policy that fails to consider underlying reasons for absences cannot satisfy the just-cause standard for employee discharge under the Ohio Unemployment Compensation Act). The wording of the Colorado, Kentucky, and Pennsylvania unemployment compensation statutes varies slightly from our statute; however, the question in *Gonzales*, *Alliant Health*, and *Gillespie* was whether violation of an employer's no-fault attendance policy automatically disqualifies an employee from receiving unemployment compensation benefits, and each court held that it did not.

■ Although not bound by this authority, we find it to be persuasive. An employer may not, by way of a policy or otherwise, unilaterally circumvent a basic determination that underlies all disqualification provisions: an assessment of whether under the totality of the circumstances the claimant's violation of the employer's rule was volitional. *See Gonzales*, 740 P.2d at 1003 ("adoption of such an approach would in effect grant employers ultimate authority to determine that some claimants automatically should not receive unemployment compensation benefits....").

■ The effect of denying Giovanoni benefits for violating Clarian's no-fault at-

---

5. While we recognize that our statute does not require a finding of "misconduct" or "willful misconduct" as do some of the statutes relied on by the courts cited above, we find these cases instructive because the "just

cause" requirement contained in ch. 22–4–15 must be read in light of the Act's overriding purpose to provide benefits to those who are unemployed through no fault of their own.

tendance policy, where all of his absences were beyond his control, is to deny benefits to an employee who became unemployed through no fault of his own. It is permissible for an employer to utilize a "no-fault" attendance policy and such policy may form an appropriate basis for discharge from employment. But when determining eligibility for unemployment benefits, the existence of such a policy does not obviate the statutory mandate to analyze whether, under the totality of the circumstances, an employee's absenteeism is the result of circumstances beyond that employee's control. Such an analysis effectuates the mandate of the Act "to provide for payment of benefits to persons unemployed *through no fault of their own.*"

### Conclusion

The decision of the Unemployment Review Board is reversed.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.

DICKSON, J., concurs with a separate opinion in which SHEPARD, C.J., joins.

DICKSON, Justice, concurring.

I agree that, under the statutory provisions existing at the time of Giovanoni's termination, he was not discharged for good cause and thus was entitled to unemployment benefits. I am concerned, however, that some readers may mistakenly apply the reasoning employed today to invalidate recent changes to the applicable statute. Today's analysis works for the prior statute, but not necessarily for the current revised statute.

The majority's analysis is based largely upon the legislature's initial declared purpose of the Act, which included providing payments to persons unemployed "through no fault of their own." Indiana Code

§ 22–4–1–1. But the General Assembly's 2009 amendments to the Act included "provisions directly addressing the issues raised by this litigation," as noted in footnote 3 of the majority opinion. Among the amendments was the expansion of the definition of "Discharge for just cause" to now include "knowing violation of a reasonable and uniformly enforced rule of an employer, including a rule regarding attendance." Ind.Code § 22–4–15–1(d)(2). This provision appears to apply even if an employee is absent for reasons beyond the employee's control. In contrast, the subsection immediately following, which applies "if an employer does *not* have a rule regarding attendance," will now allow an employee to "show good cause for absences or tardiness." Ind.Code § 22–4–15–1(d)(3) (emphasis added).

While footnote 3 in today's opinion declares "We express no opinion as to the statute as amended," I am concerned that readers may nevertheless mistakenly apply the majority's reasoning to future cases construing the 2009 amendments. The majority's broad application of the "no fault" aspect of the declared legislative purpose to the prior statutory provisions that govern the present case may be misunderstood to govern the 2009 amendments, which supersede the initial "no fault" policy. These recent changes clearly express the legislature's intention to include within "Discharge for just cause" a discharge for a knowing violation of a proper attendance rule that includes application to absences without employee fault. While prior law, applicable here to Giovanoni, precludes a no-fault attendance policy, such result will not be required under current law.

SHEPARD, C.J., joins.