**Nolan KOEWLER, Appellant,**

v.

**REVIEW BOARD OF the INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT and Dillards, Inc., Appellees.**

No. 93A02–1012–EX–1431.

Court of Appeals of Indiana.

July 7, 2011.

Nolan Koewler, Evansville, IN, Appellant pro se.

Gregory F. Zoeller, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Nolan Koewler ("Koewler") appeals the decision of the Review Board of the Indiana Department of Workforce Development ("the Board"), concluding that Koewler is disqualified from receiving unemployment insurance benefits because he was discharged for just cause from the employment of Dillards, Inc. ("Dillards"). Koewler presents the sole issue of whether the decision is contrary to law. We reverse.

### Facts and Procedural History

On July 4, 2010, Dillards conducted a cookout, offering employees food, including hamburgers and hotdogs, which had been purchased using Dillard's credit card. Dock Manager Mike Marz ("Marz") intended the leftovers to be "saved for Labor Day."[1] (Tr. 12.) He told employees "to carry it up and put it in the freezers in the break room for storage" and he "believed" Koewler had heard this instruction. (Tr. 13.) On the following day, Koewler removed two leftover hotdogs from the refrigerator and consumed them.

Marz reviewed a surveillance video and reported to the store manager that Koewler was a suspected hotdog thief. At a meeting with the store manager, Koewler admitted the truth of the allegation. A police officer was summoned, and the store manager advised Koewler that he had a choice: sign a statement that he stole two leftover hotdogs from the Fourth of July independence celebration for employees or spend the night in jail. Koewler signed a statement admitting theft. He was then discharged from his employment.

On August 13, 2010, a claims deputy of the Indiana Department of Workforce Development determined that Koewler was not discharged for just cause and thus was not disqualified from receiving unemployment insurance benefits. Dillards appealed. After a hearing, the ALJ affirmed the deputy's decision. Dillards appealed to the Board.

The Board reversed the decision of the ALJ upon determining that Koewler was discharged for just cause, pursuant to Indiana Code Section 22–4–15–1(d). This appeal ensued.

### Discussion and Decision

#### Standard of Review

The Indiana Unemployment Compensation Act ("the Act"), Indiana Code art. 22–4, provides that "[a]ny decision of the review board shall be conclusive and binding as to all questions of fact." Ind.Code § 22–4–17–12(a). Indiana Code Section 22–4–17–12(f) provides that when the Board's decision is challenged as contrary

---

1. Marz testified that the food was to be saved for Labor Day, but did not testify that he had specifically informed any employee of the intended use date. According to the testimony, the employees were merely told to transport the food and put it in freezers. Apparently, the instruction was unclear or disregarded because the food was retrieved from the refrigerator and not the freezer. Six employees had access to the refrigerator; at least one other employee was also accused of leftover food theft.

to law, the reviewing court is limited to a two part inquiry into: (1) "the sufficiency of the facts found to sustain the decision"; and (2) "the sufficiency of the evidence to sustain the findings of facts." Under this standard, courts are called upon to review (1) determinations of specific or "basic" underlying facts, (2) conclusions or inferences from those facts, sometimes called "ultimate facts," and (3) conclusions of law. *McClain v. Review Bd. of Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1317 (Ind.1998).

■■ Review of the Board's findings of basic fact is subject to a "substantial evidence" standard of review. *Stanrail Corp. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 735 N.E.2d 1197, 1202 (Ind.Ct.App. 2000), *trans. denied.* In this analysis, the appellate court neither reweighs the evidence nor assesses the credibility of witnesses and considers only the evidence most favorable to the Board's findings. *Id.* We will reverse the decision only if there is no substantial evidence to support the Board's findings. *Id.* The Board's determinations of ultimate facts involve an inference or a deduction based upon the findings of basic fact, and the ultimate facts are typically reviewed to ensure that the Board's inference is reasonable. *Id.* We examine the logic of the inference drawn and impose any applicable rule of law. *Id.* Some questions of ultimate fact are within the special competence of the Board, and it is therefore appropriate for us to accord greater deference to the reasonableness of the Board's conclusion. *Id.* However, as to ultimate facts which are not within the Board's area of expertise, we are more likely to exercise our own judgment. *Id.*

■■ Finally, we review conclusions of law to determine whether the Board correctly interpreted and applied the law. *Id.* "In sum, basic facts are reviewed for sub-stantial evidence, conclusions of law are reviewed for their correctness, and ultimate facts are reviewed to determine whether the Board's finding is a reasonable one." *Id.*

## Analysis

■ The Act provides benefits to persons who are out of work through no fault of their own. *Giovanoni v. Review Bd. of Ind. Dep't of Workforce Dev.*, 927 N.E.2d 906, 908 (Ind.2010). Unemployment insurance benefits are not an unqualified right and may be denied to claimants who are disqualified by an exception provided in ch. 22–4–15. *Id.* An individual is disqualified if discharged for "just cause," Ind.Code § 22–4–15–1, defined in subsection (d)(9) to include "any breach of duty in connection with work which is reasonably owed an employer by an employee."

■ The employer bears the initial burden of establishing that an employee was terminated for just cause. *Coleman v. Review Bd. of Ind. Dep't of Workforce Dev.*, 905 N.E.2d 1015, 1019 (Ind.Ct.App. 2009). "Just cause" determinations "must be consistent with the legislative purpose underlying the Act—to provide financial assistance to an individual who had worked, was able and willing to work, but through no fault of his or her own, is temporarily without employment." *Giovanoni*, 927 N.E.2d at 910. As such, pretextual reasons for discharge are not sufficient; at a minimum, "the claimant must have performed some volitional act or have exercised some control over the circumstances resulting in the discharge from employment." *Id.*

■ In *Hehr v. Review Bd. of Ind. Emp't Sec. Div.*, 534 N.E.2d 1122, 1126 (Ind.Ct.App.1989), a panel of this Court recognized that the "breach of duty" subsection could be subject to potential abuse

as a "convenient ground" for justifying discharge, and accordingly set forth some guidelines.

> [T]he Board should consider whether the conduct which is said to have been a breach of a duty reasonably owed to the employer is of such a nature that a reasonable employee of the employer would understand that the conduct in question was a violation of a duty owed the employer and that he would be subject to discharge for engaging in the activity or behavior.

*Id.*

Here, the Board found that Koewler had breached a duty in connection with his work that is reasonably owed to his employer[2] by eating leftover food from a Dillards-sponsored employee Fourth of July picnic conducted at the work site. This food was originally purchased by Dillards and purportedly consumed without permission and thus Koewler was fired for failing to protect employer assets—leftovers. Ultimately, the Board concluded that Koewler had been fired for theft. A person who "knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft."[3] Ind.Code § 35–43–4–2.

Koewler admits that he took two hotdogs one day after the Fourth of July picnic, and that no authorized agent of Dillards had explicitly offered the hotdogs on that day. Accordingly, Koewler does not challenge the ALJ's basic finding of fact (adopted by the Board) that he took two hotdogs.[4] However, the testimony does not support the ALJ finding that "[Marz] told employees, including the claimant, that the rest of the food should be frozen and saved for Labor Day." (App.16.) The testimony in this regard is as follows:

> Question: Now did you purchase hot dogs?
>
> Marz: I went to the store and bought them on my Company purchasing card. Yes.
>
> Question: What day?
>
> Marz: I bought them on July 2nd or 3rd.
>
> Question: What was disclosed to employees regarding this food?
>
> Marz: What was disclosed was that Mr. Putnam and I would be outside grilling burgers and hot dogs for the employees for the 4th of July, which is what we've done. The incident mentioned here was after the fact. After it was all put away and those hot dogs were to be saved for Labor Day.
>
> Question: How did employees know that the food was to be saved for Labor Day?
>
> Marz: My employees were told. They were told to carry it up and put it in the freezers in the break room for storage. My employees would've been the ones cleaning up after the event.

---

2. Ind.Code § 22–4–15–1(d)(9).

3. As for asset value, Store Manager Robert Putnam testified, "we had him on camera taking company food" and, when asked to assign a dollar amount to that specific food, testified "there, there'd be no way to tell. I couldn't give you exact dollar amount." (Tr. 8.) It is unclear what "value or use," a requisite element of our Theft statute, Ind.Code § 35–43–4–2, the leftover hotdogs placed into the refrigerator would have had. Although

Marz told employees to place leftover hotdogs in a freezer, the hotdogs at issue were in fact stored in and retrieved from a refrigerator. We assume that two hotdogs in said storage lacked great market value and that the intrinsic value to Dillards was diminishing as the safe consumption date approached.

4. The Board adopted the findings of fact of the ALJ except to the extent inconsistent with the Board decision.

Question: Were any of those employees that were cleaning up after the event Mr. Koewler?

Marz: Yes.

Question: Do you believe he heard this *instruction?*

Marz: Yes.

(Tr. 12–13.) (emphasis added.) Marz believed Koewler heard his instruction to carry food and put it away. He did not testify that Koewler heard that it was intended for Labor Day. The record reveals that employees had been offered hamburgers and hotdogs for consumption; it does not reveal that the rescission of this offer of celebratory food was in fact communicated to Koewler. Moreover, Marz's testimony indicates that the "off-limits" hotdogs were those destined for a freezer. However, Koewler and Marz each testified that the hotdogs at issue here were retrieved from the refrigerator.

No finding of fact was made as to whether Koewler knew his reaching into the refrigerator and consuming two hotdogs was unauthorized. As previously observed, theft requires a knowing or intentional exertion of unauthorized control. The Board's determination of the ultimate fact that Koewler was terminated for just cause as a hotdog thief is not reasonable. Striking the ALJ "finding of fact" which lacks evidentiary support, we conclude that the decision of the Full Board disqualifying Koewler from receiving unemployment insurance benefits is contrary to law.

Reversed.

FRIEDLANDER, J., and BROWN, J., concur.