# FOR PUBLICATION



APPELLANT PRO SE:

**DELBERT E. CONKLIN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELIZABETH ROGERS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DELBERT CONKLIN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1109-EX-864 |
| | ) | |
| REVIEW BOARD OF THE INDIANA | ) | |
| DEPARTMENT OF WORKFORCE | ) | |
| DEVELOPMENT and CARTER EXPRESS, INC., | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE REVIEW BOARD OF THE DEPARTMENT OF
WORKFORCE DEVELOPMENT
Cause No. 11-R-3768

**April 24, 2012**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Delbert Conklin appeals the denial of his application for unemployment benefits by the Review Board of the Indiana Department of Workforce Development ("the Board"). We reverse.

**Issue**

The sole restated issue we need address is whether there is sufficient evidence to support the Board's decision that Conklin was terminated from his employment for just cause.

**Facts**

Conklin was employed by Carter Express, Inc. ("Carter"), as a truck driver.[1] On May 24, 2011, Conklin was driving a load from Anderson to Peoria, Illinois, when he blacked out for a brief period of time. This caused him to drive off the road and cause damage to the truck and load he was carrying, but he awoke in time to avoid hitting trees by the side of the road. No evidence has been presented as to the medical cause of Conklin's black out, nor were there any mechanical problems with the truck.[2] There is no evidence Conklin was under the influence of drugs or alcohol. He had never experienced such an episode before, and there is no evidence in the record of Conklin being involved

---

[1] Neither Conklin nor Carter has sought to maintain their confidentiality in these proceedings. Thus, we use their full names in this opinion, pursuant to Recker v. Review Bd. of the Ind. Dep't of Workforce Dev., 958 N.E.2d 1136, 1138 n.4 (Ind. 2011).

[2] Conklin, representing himself pro se, has compiled an appendix that includes a medical report from the hospital where he was taken after the accident and that seems to indicate his black out might have been caused by "medication errors" related to blood pressure medication he was taking. App. p. 13. It does not appear this document was introduced into evidence before the Board.

in any other accidents while working for Carter. After the accident, Carter's internal accident review board reviewed the accident. It recommended that Conklin's employment be terminated because it was unsafe for him to continue driving commercial trucks on public roads.

Conklin filed an application for unemployment insurance benefits, which was approved by a claims deputy. Carter then appealed to an administrative law judge ("ALJ"), which reversed the deputy's determination and found that Conklin was not eligible for unemployment benefits. The ALJ's order found in pertinent part:

> The employer proved that the claimant demonstrated a willful or wanton disregard to the employer's interest. The claimant was responsible for transporting the load in a safe manner and the claimant blacked out and caused damage. The claimant could provide no reason or explanation of his black out. Based upon the lack of explanation, the Administrative Law Judge concludes it is reasonable to find the claimant an imminent safety hazard. Therefore, the Administrative Law Judge concludes that the claimant breached a duty reasonably owed to the employer and that the claimant was discharged for just cause . . . .

App. p. 5. Conklin appealed, and the Board affirmed the ALJ's decision and incorporated her order by reference. Conklin now appeals.

**Analysis**

When reviewing a decision of the Board, our analysis is threefold: (1) we review findings of basic fact for substantial evidence; (2) we review findings of mixed questions of law and fact—ultimate facts—for reasonableness; and (3) we review legal propositions for correctness. Recker v. Review Bd. of the Ind. Dep't of Workforce Dev., 958 N.E.2d

3

1136, 1139 (Ind. 2011). "Ultimate facts are facts that 'involve an inference or deduction based on the findings of basic fact.'" Id. (quoting McClain v. Review Bd. of Ind. Dep't of Workforce Dev., 693 N.E.2d 1314, 1317 (Ind. 1998)). We will give greater deference to the Board's conclusions when such facts are within the Board's special competence, broadening the scope of what can be considered reasonable. Id. This case turns upon resolution of whether Carter discharged Conklin from his employment for "just cause," thus disqualifying him from eligibility for unemployment benefits; this presents a question of ultimate fact that we review for reasonableness. See id.

Indiana Code Section 22-4-15-1(d) lists nine non-exclusive factors constituting "discharge for just cause" that will result in denial of unemployment benefits to a discharged employee, including "any breach of duty in connection with work which is reasonably owed an employer by an employee." Ind. Code § 22-4-15-1(d)(9). This is the sole basis argued by the Board in support of the denial of benefits to Conklin. An employer seeking to deny unemployment benefits to a fired employee bears the burden of establishing a prima facie case that the discharge was for "just cause." P.K.E. v. Review Bd. of Indiana Dep't of Workforce Dev., 942 N.E.2d 125, 130 (Ind. Ct. App. 2011), trans. denied. Once this burden is met, the employee bears the burden of producing evidence to rebut the employer's evidence. Id.

In Recker, our supreme court quoted with approval this court's decision in Hehr v. Review Bd. of Ind. Employment Sec. Div., 534 N.E.2d 1122 (Ind. Ct. App. 1989), wherein we noted that the "breach of duty" justification for a "just cause" discharge

4

"'is an amorphous one, without clearly ascertainable limits or definition, and with few rules governing its utilization.'" Recker, 958 N.E.2d at 1140 (quoting Hehr, 534 N.E.2d at 1126). Additionally,

> In considering whether an employer may utilize this provision as a basis for justifying its action, the Board should consider whether the conduct which is said to have been a breach of a duty reasonably owed to the employer is of such a nature that a reasonable employee of the employer would understand that the conduct in question was a violation of a duty owed the employer and that he would be subject to discharge for engaging in the activity or behavior.

Hehr, 534 N.E.2d at 1126.

Recker undertook a thorough examination of the type of evidence necessary to support an employer's claim than an employee was terminated for "just cause" for "breach of duty" owed to the employer. It first stated that pursuant to Giovanoni v. Review Bd. of Ind. Dep't of Workforce Dev., 927 N.E.2d 906, 908-12 (Ind. 2010), there must be two separate inquiries on this issue: first, whether the employee in fact breached a duty owed to the employer, and second, whether the employee was "at fault" for the breach. Recker, 958 N.E.2d at 1140.

Giovanoni, in turn, addressed a claim that an employee had been discharged for "just cause" for violating the employer's attendance policy. In deciding the case, the court relied upon the stated legislative purpose behind the Indiana Unemployment Compensation Act, which is "'provide payment of benefits to persons unemployed through no fault of their own . . . .'" Giovanoni, 927 N.E.2d at 910 (quoting I.C. § 22-4-1-

5

1) (emphasis added in <u>Giovanoni</u>). Building upon this statutory language, our supreme court held:

> In light of the Legislature's pronouncement, "just cause" determinations, as they pertain to an employee's discharge, must be consistent with the legislative purpose underlying the Act—to provide financial assistance to an individual who had worked, was able and willing to work, but through no fault of his or her own, is temporarily without employment. Disqualification is inappropriate if the totality of the circumstances establishes that a claimant is unemployed through no fault of his own. At a minimum, the claimant must have performed some volitional act or have exercised some control over the circumstances resulting in the discharge from employment.

<u>Id.</u>

The <u>Recker</u> opinion noted that the stated reason for discharge in <u>Giovanoni</u>—violation of an attendance policy—statutorily required consideration of the employee's intent in violating the policy, while a discharge for "breach of duty" does not require any such consideration, at least as far as the language of the statute is concerned. <u>Recker</u>, 958 N.E.2d at 1142.[3] Similarly, <u>Recker</u> seems to have disapproved of opinions from this court to the extent they suggested that a "breach of duty" must have been "willful" in order for a discharge to have been made with "just cause," because of the lack of any statutory language requiring examination of whether an employee's "breach of duty" was intentional or willful. <u>Id.</u> at 1140 n.6. It also stated that <u>Giovanoni</u> "did not address

---

[3] <u>See</u> I.C. § 22–4–15–1(d)(2) (requiring a "knowing" violation of an employer rule, including an attendance rule, to constitute a "discharge for just cause"), <u>and</u> I.C. § 22–4–15–1(d)(3) (requiring that an employee show "good cause" to exclude absences or tardiness, in absence of employer rule governing attendance, from constituting a "discharge for just cause").

6

whether the General Assembly intended to provide unemployment benefits to persons who <u>unintentionally</u> breach a duty to their employer." <u>Id.</u> at 1142.

Regardless, the <u>Recker</u> court then proceeded to address whether the particular employee in that case had either acted volitionally or had exercised some control over the circumstances that led to her discharge. <u>Id.</u> On that point, the court concluded that the employee's failure on three occasions to pass a driving test essential to her employment as a delivery truck driver were matters over which the employee had "some control." <u>Id.</u> Observing that the employee was not claiming that her failure to pass the test was the result of a "demonstrable impediment," the court held that it was reasonable for the Board to find that the employee had been discharged for "just cause" for breaching a duty owed to her employer. <u>Id.</u>

In sum, despite language in <u>Recker</u> suggesting that a "just cause" discharge determination for "breach of duty" statutorily does not require any consideration of the willfulness of the employee's conduct, the court still deemed it necessary to address whether an employee's conduct was volitional and/or whether he or she exercised "some control" over the circumstances leading to the discharge. <u>See id.</u> Here, the Board wisely makes no attempt on appeal to defend the ALJ's finding that Conklin's involuntary act of passing out while driving was "willful and wanton . . . ." App. p. 5. Still, it argues that Conklin's conduct "disregarded Carter Express's interest," and that that alone was sufficient to support denial of unemployment benefits to Conklin. Appellee's Br. p. 9.

7

We disagree. We have no doubt that Conklin's passing out while driving and damaging his truck were acts that breached his duty to Carter. As Giovanoni and Recker both make clear, however, there must also be evidence that this breach was Conklin's fault. In other words, the accident must have been the result of a "volitional act" or circumstances over which Conklin exercised "some control." See Recker, 958 N.E.2d at 1142. We simply cannot perceive how an unexplained, involuntary act of passing out while driving can be construed as a "volitional" act or a circumstance over which Conklin exercised "some control."[4] To conclude otherwise would simply stretch the concepts of "volitional" or "control" beyond their breaking points. Thus, although Carter submitted sufficient evidence of a breach of duty on Conklin's part in wrecking his truck, it did not sustain its burden of proving that the breach was his fault, in light of the undisputed finding that he involuntarily passed out while driving. The Board's determination that Conklin was discharged for "just cause" was unreasonable.

The Board argues in part, "Requiring Carter Express to continue employing and allowing individuals to drive trucks who suffer from inexplicable blackouts would expose it to an unacceptable risk." Appellee's Br. pp. 8-9. This argument is specious and blurs the line between the employment-at-will doctrine and the statutes and caselaw governing unemployment compensation. Carter certainly was not required to continue to employ Conklin. The fear of having to pay unemployment benefits is not sufficient reason to

---

[4] We emphasize that the ALJ did find that Conklin passed out while driving without explanation. The Board does not dispute the accuracy of this finding.

force Carter to make such a decision. A claim for unemployment benefits cannot be equated to or confused with a wrongful termination lawsuit.

However, Conklin is unable to safely perform his previous job through no fault of his own. The record contains no evidence to suggest otherwise. Thus, Conklin did not "breach a duty" to Carter in the statutory sense and he is eligible for unemployment benefits.

## Conclusion

The Board's determination that Conklin was discharged for "just cause" was unreasonable because of the lack of evidence that the accident was his fault. We reverse the denial of unemployment benefits to Conklin.

Reversed.

FRIEDLANDER, J., and MAY, J., concur.