# FOR PUBLICATION



**FILED**

Nov 05 2013, 5:55 am

_Kevin S. Smith_

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**THOMAS E. HAMER**
Anderson, Indiana

**RICHARD W. MCHUGH**
(Temporary Admission)
National Employment Law Project
Ann Arbor, Michigan

ATTORNEYS FOR APPELLEES:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| D.B., et al, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No.  93A02-1301-EX-71 |
| | ) | |
| REVIEW BOARD OF THE INDIANA | ) | |
| DEPARTMENT OF WORKFORCE | ) | |
| DEVELOPMENT, DEPARTMENT OF | ) | |
| WORKFORCE DEVELOPMENT, and | ) | |
| ANDERSON TRANSIT SYSTEM, INC., | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE REVIEW BOARD
OF THE DEPARTMENT OF WORKFORCE DEVELOPMENT
The Honorable Steven F. Bier, Chairperson
The Honorable George H. Baker, Board Member
The Honorable Larry A. Dailey, Board Member
Cause No. 12-R-5095

November 5, 2013

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

David Ball, et al., and Anderson Transit System, Inc. ("Anderson Transit") (collectively, "Claimants") appeal from the decision of the Review Board ("the Board") of the Indiana Department of Workforce Development ("the Department"), which denied Claimants' application for unemployment compensation under the Indiana Employment Security Act ("the Act"). See Ind. Code § 22-4-1-1, et seq.

We affirm.

**Issue**

Claimants raise numerous issues on appeal. We consolidate these into a single issue, whether the Board's construction of Indiana Code section 22-4-3-5, which excludes from the statutory definition of the term "unemployed" certain individuals who are not working because of an employer's regular unpaid vacation period, was erroneous.

**Facts and Procedural History**

We take our statement of facts largely from a joint stipulation of facts entered into by Claimants and the Department. (Exs. at 72.)

Claimants are employees or owners of Anderson Transit, which since 1970 had contracted with Anderson Public Schools to provide school bus services for the school district. For several years preceding this appeal, Anderson Transit operated 181 business days during the year—one more day than Anderson Public Schools held classes. During school breaks and recesses, Anderson Transit did not operate.

For several years, and through the 2011-2012 school year, employees of Anderson

2

Transit were informed of the next year's school schedule in advance of the end of the then-current school year. Before the beginning of summer break, employees were offered reasonable assurance of the availability of employment when school returned to session.[1]

Also through the previous years and the 2011-2012 school year, it had been the practice of Anderson Transit's employees to apply for unemployment compensation benefits at the commencement of the summer break, during which time the business did not operate. Anderson Transit's owners never opposed the provision of unemployment compensation benefits to their employees, and indeed sought unemployment compensation benefits for themselves during the School summer break.

In the years preceding the 2011-2012 school year, the employees of Anderson Transit were generally granted unemployment benefits during the summer break. At the conclusion of the 2011-2012 school year, Anderson Transit employees again sought unemployment compensation benefits.

Unlike prior years, however, the Department denied those applications, and the Claimants individually appealed. On September 21, 2012, the Board ordered the appeals consolidated due to the common issues. (Exs. at 1.)

A hearing was held on October 29, 2012, during which testimony was offered by several of the individual Claimants, representatives of Anderson Transit, and representatives

---

[1] Ind. Code § 22-4-3-5(b) excludes from the scope of individuals affected by its provisions employees who were not extended reasonable assurance of continued employment after an employer-wide shutdown or vacation period. The parties stipulated that Anderson Transit extended its employees such assurances in this case.

3

of the Department.[2]    On December 29, 2012, the Board reached its findings of fact, conclusions of law, and finding of ultimate fact denying the claims.  As a basis for the denial, the Board pointed to changes made in 2011 and 2012 to statutory language of the Act. Specifically, the Board interpreted and applied Indiana Code section 22-4-3-5, which was added by Public Law 2-2011, Section 3, and amended by Public Law 6-2012, Section 152.

Interpreting this statute in light of its expertise and with reference to other statutes governing unemployment compensation, the Board found that the summer break period was a vacation period within the regular vacation policy and practice of Anderson Transit, and that Anderson Transit gave its employees reasonable assurance of employment at the conclusion of the vacation period.  The Board further noted that the Department had implemented no rule or policy regarding the filing of any kind of notice or other document in advance of Anderson Transit's closure for the summer break, and thus there was no policy with which Anderson Transit could be said to have failed to comply.  The Board also found that Claimants had not contended that they were otherwise involuntarily unemployed so that they would otherwise be eligible for benefits.  The Board thus found as an ultimate fact that Claimants were not eligible to receive unemployment compensation benefits during the summer break, and denied all of the claims.

This appeal ensued.

---

[2] Representatives of the Department testified concerning the cost of prior years' claims against Anderson Transit relative to the prior sums the business had paid in unemployment compensation insurance premiums. Both parties address these issues in their briefs, but our review of the Board's order does not reveal that such evidence formed the basis for the Board's decision.  We therefore do not address those matters here.

4

## Discussion and Decision

### Standard of Review

Claimants appeal from a final decision of the Board. Our standard of review for such appeals is well settled:

> The standard of review on appeal of a decision of the Board is threefold: (1) findings of basic fact are reviewed for substantial evidence; (2) findings of mixed questions of law and fact—ultimate facts—are reviewed for reasonableness; and (3) legal propositions are reviewed for correctness. McClain v. Review Bd. of Ind. Dep't of Workforce Dev., 693 N.E.2d 1314, 1318 (Ind. 1998). Ultimate facts are facts that "involve an inference or deduction based on the findings of basic fact." Id. at 1317. Where such facts are within the "special competence of the Board," the Court will give greater deference to the Board's conclusions, broadening the scope of what can be considered reasonable. See id. at 1318.

Recker v. Review Bd. of Ind. Dep't of Workforce Dev., 958 N.E.2d 1136, 1139 (Ind. 2011). "Courts uniformly recognize that propositions of law, such as the construction of the statute, are for the court to determine." McClain, 693 N.E.2d at 1317. On questions of ultimate fact—which our supreme court has characterized as mixed questions of fact and law—reviewing courts "must determine whether the Board's finding of ultimate fact is a reasonable one," and the extent of deference extended to the decision "turns on whether the issue is one within the expertise of the Board." Id. at 1318.

### Legal Standard

Claimants challenge the Board's construction of Indiana Code section 22-4-3-5, which the Board concluded placed Claimants within an exclusion from the definition of "unemployed" as it is used in the Act, and thus rendered Claimants ineligible for unemployment compensation benefits.

Statutory interpretation is a pure matter of law. <u>Whiteside v. Ind. Dep't of Workforce Dev.</u>, 873 N.E.2d 673, 675 (Ind. Ct. App. 2007). We review such issues <u>de novo</u>. <u>Chrysler Grp., LLC v. Review Bd. of Ind. Dep't of Workforce Dev.</u>, 960 N.E.2d 118, 124 (Ind. 2012). If the language of the statute is clear and unambiguous, we give the words and phrases of the statute their plain, ordinary, and usual meanings to determine and implement the legislature's intent. <u>Id.</u> Where, as here, the statute is one an administrative agency is charged with enforcing, we defer to the agency's reasonable interpretation of such a statute over an equally reasonable interpretation by another party. <u>Id.</u>

As a guide to construction of the Act, our legislature has declared:

the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is declared hereby to be a serious menace to the health, morale, and welfare of the people of this state and to the maintenance of public order within this state. Protection against this great hazard of our economic life can be provided in some measure by the required and systematic accumulation of funds during periods of employment to provide benefits to the unemployed during periods of unemployment and by encouragement of desirable stable employment. The enactment of this article to provide for payment of benefits to persons unemployed through no fault of their own, to encourage stabilization in employment, and to provide for integrated employment and training services in support of state economic development programs, and to provide maximum job training and employment opportunities for the unemployed, underemployed, the economically disadvantaged, dislocated workers, and others with substantial barriers to employment, is, therefore, essential to public welfare; and the same is declared to be a proper exercise of the police powers of the state. To further this public policy, the state, through its department of workforce development, will maintain close coordination among all federal, state, and local agencies whose mission affects the employment or employability of the unemployed and underemployed.

I.C. § 22-4-1-1.

"[C]ourts regularly construe provisions of the Act liberally to favor the unemployed

6

and promote the Act's humanitarian purpose." Chrysler Grp., 960 N.E.2d at 126. "Liberal construction of a statute requires narrow construction of its exceptions." Robinson v. Indiana University, 659 N.E.2d 153, 156 (Ind. Ct. App. 1995), trans. denied. Nevertheless, we interpret statutes to give effect to the intent of the legislature, and presume that "the legislature intended the language used in the statute be applied logically and not to bring about an unjust or absurd result." Penny v. Review Bd. of Ind. Dep't of Workforce Dev., 852 N.E.2d 954, 960 (Ind. Ct. App. 2006), trans. denied. Too, we avoid interpreting a statute in such a manner as to render its provisions mere surplusage. In re Adoption of D.C., 887 N.E.2d 950, 959 (Ind. Ct. App. 2008).

In order to be eligible to collect unemployment benefits under the Act, an individual must ordinarily, among other requirements, satisfy the Act's definition of someone who is unemployed. I.C. § 22-4-14-1(a). The definitions of "totally unemployed" and "partially unemployed" are provided by statute. I.C. §§ 22-4-3-1 & -2. An individual is totally unemployed "in any week with respect to which no remuneration was payable to him for personal services." I.C. § 22-4-3-1. An individual is partially unemployed "when, because of lack of available work, he is working less than his normal customary full-time hours for his regular employer and his remuneration is less than his weekly benefit amount in any calendar week," provided that individual is not entirely compensated on the basis of commission. I.C. § 22-4-3-2.

In 2011, the General Assembly added to Chapter 22-4-3 of the Indiana Code three sections affecting the statutory definition of unemployment. See I.C. §§ 22-4-3-3, -4 & -5

7

(enacted by P.L. 2-2011 Sections 1, 2 & 3). In 2012, the General Assembly amended two of these provisions, including the provision at issue here, Section 22-4-3-5, and made those amendments effective immediately upon passage. See P.L. 6-2012 section 152 (rendering amendments effective as of the date of passage, February 22, 2012). As amended, Section 22-4-3-5 provides:

> (a) Except as provided in subsection (c) and subject to subsection (b), an individual is not totally unemployed, part-totally unemployed, or partially unemployed for any week in which the department finds the individual:
>
>> (1) is on a vacation week; and
>>
>> (2) has not received remuneration from the employer for that week, because of:
>>
>>> (A) a written contract between the employer and the employees; or
>>>
>>> (B) the employer's regular vacation policy and practice.
>
> (b) Subsection (a) applies only if the department finds that the individual has a reasonable assurance that the individual will have employment available with the employer after the vacation period ends.
>
> (c) Subsection (a) does not apply to an individual whose employer fails to comply with a department rule or policy regarding the filing of a notice, report, information, or claim in connection with an individual, group, or mass separation arising from the vacation period.

The Act does not define the terms "vacation," "vacation period," and "vacation policy and practice." It is the Board's interpretation of these terms that forms the nucleus of the present dispute.

## Analysis

We turn now to Claimants' arguments on appeal. Claimants argue that the Board

8

construed the vacation week provisions of Section 22-4-3-5 too broadly in light of existing law, and that the Board has construed too narrowly the notice provisions of the statute. Claimants also address other questions of statutory construction associated with the Board's decision. We address the various claims in turn, mindful of both the broad humanitarian purposes of the Act as well as our standard of review, which defers to agency expertise in interpreting statutes.

*Construction of Section 22-4-3-5's Notice Provisions*

Claimants first argue that the Board's construction of Section 22-4-3-5's notice provisions, in subsections (a) and (c), are erroneous. Here, the Claimants note, the Department did not promulgate any rules or policies "regarding the filing of a notice, report, information, or claim in connection with an individual, group, or mass separation arising from the vacation period." I.C. § 22-4-3-5(c). Claimants argue that the opening clause of subsection (a), "Except as provided in subsection (c)," which was added by the 2012 amendment to the statute, requires that the Department implement a rule or policy under subsection (c). Claimants contend that the addition of the opening clause of subsection (a) indicates that the legislature intended to narrow the applicability of subsection (c) to only those situations in which notice is given. Absent rule- or policymaking governing notice requirements under the Act, the argument goes, the provisions of subsection (a), which the Board interpreted as excluding claimants from the statutory definition of "unemployed" for purposes of eligibility for unemployment compensation, are void.[3] Thus, Claimants say, it

---

[3] The parties stipulated that Anderson Transit complied with the requirements for reasonable assurance of

9

was error for the Board to deny their applications for unemployment benefits.

In advancing their interpretation, Claimants point in particular to two cases from this Court as standing for the proposition that agency rules and policies are invalid where they are contrary to the language of governing statutes. See Lee Alan Bryant Health Care Facilities, Inc. v. Hamilton, 788 N.E.2d 495 (Ind. Ct. App. 2003) (holding as invalid, agency budgetary shortfalls notwithstanding, a rule creating a waiting list for applications for assistance, where statute used mandatory language of "shall" to require agency investigation and determination of claims); Potts v. Review Bd. of Ind. Emp't Sec. Div., 438 N.E.2d 1012 (Ind. Ct. App. 1982) (holding as invalid agency rules that produced "unfair and inconsistent results" with respect to crediting, for purposes of determining quarterly eligibility for benefits, vacation payments vis-à-vis regulations related to crediting regular wage payments). Yet these cases do not establish that the Board's construction of the statute at issue in this case is incorrect; rather, they relate to agency actions or policies promulgated contrary to statutory language.

While Claimants' construction is reasonable, so too is the statutory construction advanced by the Board. The Board argues that the statutory language does not require rule- or policymaking concerning notice under subsection (c) in order for subsection (a) not to be a nullity. Indeed, the plain language of subsection (c) and the opening clause of subsection (a) do not require the Department to take any action in order for the rest of the statute to take effect. Moreover, the Department's construction avoids a result that would render subsections (a) and (b) mere surplusage. We therefore find no error in the Board's

future employment set forth by subsection (b), and that provision is therefore not at issue in this case.

10

construction of the notice provisions of Section 22-4-3-5.

*Construction of "Vacation"*

Claimants next argue that the Board's construction of the term "vacation" in the statute is overly broad. Noting that the term lacks a statutory definition, Claimants direct us to dictionary definitions of the term, the common use of the term, and its similarity to the term "layoff." They also direct us to several Indiana cases that, they argue, demonstrate the proposition that an unpaid shutdown like the one at issue in this case is a layoff compensable under the Act. We disagree.

Claimants' argument on this point turns on two cases. One of these, Am. Bridge Co. v. Review Bd. of Ind. Emp't Sec. Div., held that "the fact that a worker expects to resume his previous employment should and does not, under the … Act, constitute a bar to his being unemployed … and entitled to benefits if otherwise qualified." 121 Ind. App. 576, 584, 98 N.E.2d 193, 196 (Ind. Ct. App. 1951). Yet our supreme court distinguished the holding of American Bridge, holding that where in American Bridge claimants were entitled to compensation under the terms of the Act at that time, this entitlement was the result of a shutdown for inventory purposes. Adams v. Review Bd. of Ind. Emp't Sec. Div., 237 Ind. 63, 66, 143 N.E.2d 564, 565 (Ind. 1957). In Adams, however, the claimants were out of work as the result of a scheduled vacation that resulted in complete shutdown of the employer's facility, which vacation was provided for in a collective bargaining agreement; thus, the Adams Court held that the claimants in that case were not entitled to unemployment compensation. Id.

11

Claimants also rely upon a case in which our supreme court has more recently addressed the issue of a vacation period, Indiana State Univ. v. LaFief, 888 N.E.2d 184 (Ind. 2008). In that case, LaFief had been hired as an assistant professor by Indiana State University. Id. at 185. He served two one-year contract periods in 2004-2005 and 2005-2006, after which the university declined to hire LaFief for the following school year. Id. LaFief applied for unemployment compensation, which was eventually granted; Indiana State University appealed. Id. at 185-86. On transfer, our supreme court held that LaFief was entitled to unemployment compensation because entry into a fixed-term agreement did not of itself waive an employee's right to unemployment compensation. Id. at 186-87. The LaFief Court was clear to point out, however, that its holding did not

> alter the general rule that employees who contractually agree to mandatory vacation periods or temporary shut downs are not eligible for unemployment benefits so long as they have reasonable assurance that they will continue to be employed after the mandatory vacation period or temporary shut down ends.

Id. at 187 (citing, inter alia, Pope v. Wabash Valley Human Servs., Inc., 500 N.E.2d 209 (Ind. Ct. App. 1986), which held that employees could enter into non-collective bargaining agreement employment contracts that included provisions for shutdown periods that would render them ineligible for unemployment compensation).

Thus, the general rule before the enactment of Section 22-4-3-5 was substantively similar to the statutory provisions that are the subject of the present case, with the exception of subsection (c)'s notice provision. That is, Indiana law before the enactment of Section 22-4-3-5 recognized the idea of a mandatory vacation or shutdown period that would not entitle employees to unemployment compensation—even when those employees were unpaid due to

12

the lack of available vacation pay credit.  See Adams, 143 N.E.2d at 566-68 (holding no entitlement to unemployment compensation during a mandatory shutdown period, where claimant had not accrued and therefore was not entitled to vacation pay).  And where our legislature enacts a law that appears to modify common law by statute, we presume that the legislature "is aware of the common law and that its intention is not to change the common law beyond what the express terms of its enactments and fair implications allow."  Town of Avon v. W. Cent. Conservancy Dist., 957 N.E.2d 598, 603 (Ind. 2011).

Thus, we cannot conclude that the Board's interpretation of the use of the term "vacation" in Section 22-4-3-5 was unreasonable.

*Construction in Light of the Seasonal Employment and Education Provisions*

Claimants argue further that the Department's construction of Section 22-4-3-5 is overly broad in that it effectively renders a nullity the Act's provisions concerning seasonal work and the availability of unemployment benefits related to such work.

The Act provides for the limitation of unemployment compensation where an employer obtains a determination from the Department that the employer is a seasonal employer.  I.C. § 22-4-14-11.  A seasonal employer is defined by the Act as:

> An employer that, because of climatic conditions or the seasonal nature of a product or service, customarily operates all or a portion of its business only during a regularly recurring period or periods of less than twenty-six (26) weeks for all seasonal periods during a calendar year.

I.C. § 22-4-7-3.  Once an employer has been classified as a seasonal employer, that determination limits the period of availability and amount of unemployment benefits available to a seasonal worker who is otherwise entitled to unemployment compensation.

13

I.C. § 22-4-14-11.

A seasonal worker is defined by the Act as an employee who:

(1) has been employed by a seasonal employer in seasonal employment during a regularly recurring period or periods of less than twenty-six (26) weeks in a calendar year for all seasonal periods, as determined by the department;

(2) has been hired for a specific temporary seasonal period as determined by the department; and

(3) has been notified in writing at the time hired, or immediately following the seasonal determination by the department, whichever is later:

(A) that the individual is performing services in seasonal employment for a seasonal employer; and

(B) that the individual's employment is limited to the beginning and ending dates of the employer's seasonal period as determined by the department.

I.C. § 22-4-8-4(b). The Act defines "seasonal employment" as "services performed for a seasonal employer during the seasonal period in the employer's seasonal operations, after the effective date of a seasonal determination with respect to the seasonal employer." I.C. § 22-4-8-4(a).

Directing our attention to these provisions, Claimants argue that the legislature's intent was not to create a broad new classification of workers that is subject to exclusion from unemployment benefits without also requiring the same procedures of employers as would apply in a seasonal employment case. However, Claimants continue, the Board's interpretation of the statute creates such a "wide-open" result. (Claimants' Br. at 31.)

We do not think the Board's interpretation of the statute in this case is as "wide-open" as Claimants argue, because it comports with the provisions of Indiana Code section 22-4-14-

14

7. That Section of the Act, which limits its operation to individuals "in the employ of an educational service agency," governs the unemployment compensation eligibility of employees of educational institutions during holiday recess and customary vacation periods. I.C. § 22-4-14-7(a)(4). The statute precludes employees from collecting unemployment compensation:

> based on the service of an individual for any week which commences during a period between two (2) successive academic years or terms if the individual performs the service in the first of the academic years or terms and there is reasonable assurance that the individual will perform the service in the second of the academic years or terms.

I.C. § 22-4-14-7(a)(2). The Act provides further:

> With respect to any services described in subdivision (1) or (2), compensation payable for these services shall be denied to any individual for any week which commences during an established and customary vacation period or holiday recess if there is reasonable assurance that the individual will perform the services in the period immediately following the vacation period or holiday recess.

I.C. § 22-4-14-7(a)(3). Thus, school employees who are not working as a result of a scheduled school closure—including those who are not working during the period between academic years—and who have reasonable assurance of continued employment after the closure concludes, are excluded from collecting unemployment compensation. Indianapolis Pub. Schs. v. Review Bd. of Ind. Emp't Sec. Div., 473 N.E.2d 155, 157-58 (Ind. Ct. App. 1985).

The Board's interpretation of Section 22-4-3-5 here mirrors the longstanding interpretation and application of Section 22-4-14-7. In this case, the Board has applied that interpretation to employees of a private business, the operations of which are essentially

15

dictated by the schedule of Anderson Public Schools. Thus, we cannot conclude that the Board's interpretation in this case of Section 22-4-3-5 in light of the seasonal work provisions is unreasonable.

*Construction in Light of the Purposes of the Act*

Finally, we turn to Claimants' argument that the Board's construction of Section 33-4-3-5 is contrary to the broad purposes of the Act.

As we observed above, the general purpose of the Act is to protect against the "great hazard" of "[e]conomic insecurity due to unemployment," where individuals are unemployed "through no fault of their own." I.C. § 22-4-1-1. We therefore interpret the specific provisions of the Act liberally in order to achieve the Act's humanitarian purposes, and we narrowly construe exceptions. Chrysler Grp., 960 N.E.2d at 126; Robinson, 659 N.E.2d at 156.

Latching onto the language setting forth the general purpose of the Act, Claimants assert that they are involuntarily unemployed—that is, unemployed through no fault of their own—"because their employer is economically dependent upon its sole customer." (Claimants' Br. at 38.) Claimants note that an officer for Anderson Transit testified that the business would provide more work to employees if Anderson Public Schools had operated longer during the five years preceding Claimants' applications for benefits.[4]

Claimants direct our attention to the Indiana Supreme Court's recent application of the

_____

[4] Claimants also insist that the Board's stated presumption that an award of benefits is adverse to an employer's interests is ill-founded, and argue that employers and society as a whole have their interests served by the award of benefits. This position ignores the increased unemployment compensation insurance premiums assessed against individual employers where employees collect unemployment benefits, and does not otherwise advance Claimants' arguments for benefit eligibility.

16

Act's "no fault" language in <u>Giovanoni v. Review Bd.</u>, 927 N.E.2d 906 (Ind. 2010). In <u>Giovanoni</u>, the court reviewed a decision by the Review Board that denied benefits to an employee who missed numerous days of work because of a medical condition, and one day as a result of hazardous road conditions. <u>Id.</u> at 908. Under a "no-fault" attendance policy, Giovanoni's employment was terminated, and the Board concluded that he was not entitled to benefits because he was discharged for just cause. <u>Id.</u> Looking in part to the purposes of the Act as expressed in Section 22-4-1-1, the <u>Giovanoni</u> Court reversed the Board's determination and concluded that a determination "as it relates to absenteeism, demands an individualized analysis of whether the employee violated the policy through no fault of his own." <u>Id.</u> at 911. Thus, the court concluded, "denying Giovanoni benefits … where all his absences were beyond his control, is to deny benefits to an employee who became unemployed through no fault of his own." <u>Id.</u> at 911-12.

Importantly, the <u>Giovanoni</u> Court observed:

"just cause" determinations … must be consistent with the legislative purpose underlying the Act…. Disqualification is inappropriate if the totality of the circumstances establishes that a claimant is unemployed through no fault of his own. At a minimum, the claimant must have performed some volitional act or have exercised some control over the circumstances resulting in discharge from employment.

<u>Id.</u> at 910. Claimants point to this passage to undergird their position that it is neither Anderson Transit nor its employees that have acted in such a manner as to cause Claimants' discharge in employment. Rather, a third party—Anderson Public Schools—dictates Anderson Transit's work schedule, and thus there was no "volitional act" or "control over the circumstances" associated with Claimants' unemployment. <u>Id.</u>

17

Yet under the facts of this case, we cannot agree with Claimants that the Board erred when it concluded that Anderson Transit's employees are not involuntarily unemployed and thus not entitled to benefits. We do not doubt that Anderson Transit and its employees alike wish that there was more work available during the summer months. But we cannot conclude that the Board acted improperly when it concluded under the totality of the circumstances that offering, accepting, and maintaining employment relationships with full knowledge of the 181-day schedule maintained by Anderson Transit did not render Claimants unemployed outside their own volition.

## Conclusion

The Board's interpretation of the Act was not unreasonable, and the Board did not err when it concluded that Claimants were not unemployed through no fault of their own, as contemplated by the Act. We therefore affirm the Board's decision.

Affirmed.

MAY, J., and BRADFORD, J., concur.

18